OPINION op the Beview Panel
Hogenson, Presiding Commissioner,
delivered the opinion of the Beview Panel:
By Senate Besolution 154,90th Congress, the United States Senate on November 21,1967, referred S. 2224, a bill for the relief of N. M. Bentley, a partnership consisting of N. M. Bentley and George Markwalter, to the Chief Commissioner of the Court of Claims, pursuant to sections 1492 and 2509 of title 28, United States Code, as amended by Pub. L. No. 89-681, 89th Cong., 2d Sess., 80 Stat. 958.
The Chief Commissioner duly referred this case to Commissioner William E. Day for proceedings in accordance with the rules, and designated the above members of the Beview Panel to consider the trial commissioner’s report on the merits of plaintiff’s equitable or legal right to recover.
After trial of the case, Commissioner Day on August 13, 1969, reported his opinion and findings of fact, concluding that plaintiff has neither a legal nor an equitable claim against the United States.
*549 Plaintiff did not file any notice of intention to except to Commissioner Day’s opinion, findings of fact, and conclusion within the 30 days allowed by the rules, or at all, and no exceptions have 'been filed.
Defendant by its motion filed September 19, 1969, has requested the Review Panel to adopt the report of the trial commissioner 'as the basis of its action in this case, and to submit the same to the Chief Commissioner for transmittal to the United States Senate. Plaintiff having been served with such motion, did not file any objections or response to the same within the 30 days allowed by the rules, or at all.
Since no exceptions have been taken by plaintiff to Commissioner Day’s findings of fact, such findings axe presumed to be and are accepted as correct. On the basis of those facts, Commissioner Day’s opinion and ultimate conclusion are fully justified. Accordingly, the Review Panel adopts Commissioner Day’s opinion, findings of fact, and conclusion, and recommends that plaintiff’s claim be denied as without merit.
The Review Panel concludes that plaintiff’s demand is not a legal or equitable claim against the United States, and that any payment by Congress thereon would be a gratuity.
This report is accordingly submitted to the Chief Commissioner for transmittal to the United States Senate.
OPINION OP THE TRIAL COMMISSIONER
Day, Commissioner:
These proceedings under 28 U.S.C. sec. 2509, relate to Senate Resolution 154, which was referred by the United States Senate to the Chief Commissioner of the United States Court of Claims on November 21,1967.
S. 2224,90th Congress, 1st Session, was entitled “A bill for the relief of N. M. Bentley, a partnership consisting of N. M. Bentley and George Markwalter.” It proposed that Congress enact legislation appropriating $44,924 “in full satisfaction of all claims of such partnership and the said individuals against the- United States for reimbursement for losses sustained in the performance of contract numbered AF-09( 603)-25991, entered into by the United States and such partnership, such losses having occurred as the result of errors and deficiencies *550 in the specifications provided by the United States for the work covered by such contract * *
Earlier action on the same claims of the partnership before the House of [Representatives resulted in a reference of the matter by that body to the Court of Claims in 1962. Following the decision of the Supreme Court in Glidden v. Zdanok, 370 U.S. 530, the court concluded that it lacked jurisdiction and returned the papers to the House of [Representatives.
On February 1'2,1968, N. M. Bentley, a co-partnership consisting of N. M. Bentley and George Markwalter filed its petition herein claiming entitlement to the sum of $44,924.01, representing losses allegedly incurred in the performance of Air Force contract No. AF-09( 603)-25991 for exterior-and interior painting of certain buildings at [Robins Air Force Base, Georgia. The plaintiff alleges that the losses were incurred because of actions by the government representatives causing delays, disruption of the work schedules and harassment of the plaintiff and its employees.
The partnership (which will hereafter be referred to as the plaintiff) was formed in 1955 for the purpose of performing the contract in suit. The claims are being pursued solely by George Markwalter, since he bore the brunt of the partnership losses. Markwalter has not had any contact with his partner, Bentley, since 1958.
The trial before this commissioner was very short. Only one witness was called — George Markwalter — whose testimony related primarily to the impact upon him of the losses which the plaintiff incurred in performing the contract in suit.
At the outset counsel for the plaintiff observed that plaintiff relied entirely upon the record and exhibits of a proceeding before the Armed Services Board of Contract Appeals.
The Air Force issued its invitation for bids (No. IFB-09-603-55-88) on May 24,1955.
George Markwalter was, during all times material herein, the Executive [Director of the Macon (Georgia) Housing Authority. Bentley had previously performed some painting contracts for that Authority — the largest was of the range from $22,000 to $25,000. Following the issuance of the invitation for bids, the partnership was formed and Mr. Bentley *551 prepared the estimate, since Markwalter had had no experience in bidding on a large painting contract.
The plaintiff submitted its bid on a unit cost basis, totaling $111,082.41. The next low bid was some $8,000 higher for the unit prices as extended for the various estimated quantities. Other bids were higher.
Markwalter was to supply the financial backing for the plaintiff and Bentley was to and did (while he was actively pursuing the contract work) receive $125 per week as salary for supervision of the work. The bid submitted by the plaintiff, which became the contract upon acceptance by the defendant, covered 16 items of work under four main headings — Repaint Wooden Buildings, Repaint Masonry Buildings, Repaint Metal Buildings and Repaint Interior Surfaces.
By Change Order No. 1, the contract price on the basis of increased estimated quantities of work was increased to $138,853.01.
The notice of award was sent to the plaintiff on June 25, 1955. It stated that work was to commence within 10 calendar days after receipt of notice to proceed and was to be completed within 120 days after receipt of notice to proceed.
The notice to proceed was received by the plaintiff on August 9,1955, and work began at about that time, but was not completed until about June 30,1956. Mr. Bentley abandoned the job on or about April 22, 1956. Thereafter, Mr. Mark-waiter devoted more time to the general supervision of the work. During most of the period of performance, he had been present at the jobsite for only 2 or 3 hours every other day.
After the work was finished, the plaintiff presented a “hardship” claim to the contracting officer in the amount of $56,884.35. The contracting officer on May 20, 1957, allowed the claim in part — to the extent of $444.60. Thereafter the plaintiff appealed to the Armed Services Board of Contract Appeals. This Board conducted a full and fair hearing at which the testimony of 13 witnesses was heard during six full day sessions. In a carefully documented opinion, the Board allowed the appeal in part (as to 4 of the 15 items of claim) granting the plaintiff an equitable adjustment in the sum of $16,595.14.
Following this award, the contract was amended by a *552 supplemental agreement by which the plaintiff, acting on the considered advice of counsel, released any further claims against the government arising under the contract in suit.
Upon execution of the supplemental agreement referred to, the plaintiff was paid the $16,595.14. The plaintiff, of course, after releasing further claims, did not seek judicial review of the ASBCA decision. It therefore (and counsel for the plaintiff here readily concedes) has no legal basis for the claims herein presented.
Counsel contends however that on the entire record, the plaintiff is entitled to equitable relief.
It is clear from the record that the plaintiff expended $190,616.80 in the performance of contract work. It was paid (including the ASBCA award) a total of $155,354.55. There is no question that the plaintiff, and particularly Markwalter, its financial backer, sustained a large loss in performing the contract.
On a careful review of the entire record it must be concluded that the government has dealt fairly with the plaintiff, and the losses which it suffered are not due to delays, harassment by government inspectors or acts of the government. Indeed, Mr. Beid, who was the plaintiff’s superintendent after Mr. Bentley walked off the job seven weeks 'before completion, testified that the inspection was not unduly strict but was average for a job of this kind. Inefficiency on the part of the plaintiff’s employees was shown particularly in the early stages of the work. There was some delay in receiving needed materials. There was laxity in supervision. Painters were found pilfering paint supplies.
The cases cited by the plaintiff are inapposite. Smelcer v. United States, 130 Ct. Cl. 510, 127 F. Supp. 607 (1955) was a much stronger case than is presented here. Smelcer, who operated a small foundry, produced parts for Army Ordnance material as a subcontractor, after'assurances by responsible officials of the Smaller War Plants Corporation that he would not be allowed to incur a loss. After relying on such assurances and having suffered losses after working 7 days a week, 12 hours per day, without compensation, the court in that case recommended to the Congress an award of $20,000 for compensation for Smelcer’s 38 months of work without *553 pay, as well as $9,537/75 loss on machinery used in connection with work during the period of the claim.
In this case, Markwalter largely left the supervision up to Bentley, until the latter left the job and the area. Since there were performance bonds and payment bonds given by the partners and Markwalter was a man of some means, he found it necessary to devote more time to the j ob and to finish it.
The cases cited by the defendant are controlling here, particularly Drake America Corporation v. United States, 168 Ct. Cl. 318 (1964) and Hellander v. United States, 147 Ct. Cl. 550, 178 F. Supp. 932 (1959).
CONCLUSION
It is therefore recommended that Congress be advised that the plaintiff has neither a legal nor an equitable claim against the United States.
FINDINGS oe Fact
1. S. 2224, 90th Congress, 1st Session, was introduced in the United States Senate on August 3,1967, and was a bill for the relief of N. M. Bentley, a partnership consisting of N. M. Bentley and George Markwalter. It proposed the enactment of an appropriation to pay the partnership referred to, the sum of $44,924 in full satisfaction of all claims of the partnership and the individual partners against the United States for reimbursement for losses sustained in the performance of contract numbered AF-09(603)-25991, “* * * such losses having occurred as the result of errors and deficiencies in the specifications * *
2. Earlier action by the House of Eepresentatives had been taken on the same claims by the partnership.
In 1962, the House of Eepresentatives referred claims of the partnership to the United States Court of Claims pursuant to House Eesolution. Following the decision of the Supreme Court in Glidden Co. v. Zdanok, 370 U.S. 530, decided June 25, 1962, this court concluded that it lacked jurisdiction and returned the papers to the House of Eepresentatives.
On March 22, 1967, the House of Eepresentatives passed H.E. 1586, a bill waiving the statute of limitations and con *554 ferring jurisdiction on the United States Court of Claims to hear, determine and render judgment for any amount found to be legally or equitably due on the claims of the partnership referred to above, for losses incurred in performance of the contract referred to above.
3. On November 17,1967, the United States Senate agreed to Senate Resolution 154, providing as follows:
Resolved, That the bill (S. 2224) entitled “A bill for the relief of N. M. Bentley, a partnership consisting of N. M. Bentley and George Markwalter”, now pending in the Senate, together with all the accompanying papers, is hereby referred to the chief commissioner of the Court of Claims; and the chief commissioner of the Court of Claims shall proceed with the same in accordance with the provisions of sections 1492 and 2509 of title 28 of the United States Code, and report to the Senate, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand as a claim, legal or equitable, against the United States and the amount, if any, legally or equitably due from the United States to the claimant.
4. On February 12, 1968, N. M. Bentley, a copartnership, filed its petition herein, claiming entitlement to the sum of $44,924.01, a figure, which according to the petition includes no profit but represents an excess of its costs over the contract price, as amended, which it received on completion of an Air Force contract (No. AF-09 (603) — 25991) for exterior and interior painting of certain buildings at Robins Air Force Base, Georgia. The losses suffered by the plaintiff were allegedly directly caused by acts of the government resulting in delays, disruption of work schedules and harassment of plaintiff and its employees.
5. The plaintiff herein is a partnership composed of N. M. Bentley and George Markwalter, Sr. The partnership was entered into in 1955 for the purpose of performing a contract for exterior and interior painting of the buildings at Robins Air Force Base, Georgia. The instant claim is being pursued solely by Mr. Markwalter, who has not had any contact with his co-partner, Mr. Bentley, since 1958.
6. The trial before the commissioner was very short. One *555 witness was called — George E. Markwalter, Sr., who testified briefly as to the impact of the partnership losses on him.
Counsel for plaintiff stated at the outset that he would rely on the record and exhibits of a hearing before the Armed Services Board of Contract Appeals, which had considered an appeal from a contracting officer’s decision.
7. Invitation for Bids No. IFB-09-608-55-88 was issued by the Air Force under date of May 24,1955. The invitation called for bids on exterior and interior painting of buildings at Robins Air Force Base, Georgia. The plaintiff partnership submitted the low bid in the 'amount of $111,082.41. Plaintiff’s 'bid was less than $8,000 below the next highest bid of $118,721.85. Plaintiff’s bid was accepted by the defendant and became the contract price in the contract which was signed by the parties.
8. Plaintiff’s bid was prepared by Mr. Bentley. Mr. Mark-waiter had no experience in working up a bid on a painting contract.
9. Mr. Markwalter and Mr. Bentley entered into a partnership agreement in 1955 for the performance of this contract. Under the terms of the partnership agreement, Mr. Bentley and Mr. Markwalter were to share equally in whatever profits were derived from, the job, and Mr. Bentley was to receive $125 per week as salary for supervision of the work. Mr. Bentley was thus a “working partner” and Mr. Markwalter furnished the working capital for the partnership. Mr. Markwalter- during all times material herein, was employed as Executive Director of the Macon Housing Authority.
10. Mr. Markwalter had had no practical experience as a painting contractor, although he had in his official capacity contracted with painting contractors for work for the Authority.
11. Mr. Bentley had performed no painting contract as extensive as the contract in suit. The largest painting contract which he performed was one for the Macon Housing Authority for a contract price of between $22,000 and $25,000.
12. The contract, as awarded, was a unit price contract. Schedule “C” of the contract covered payment provisions. There were 16 items of work under four main headings— Repaint Wooden Buildings, Repaint Masonry Buildings, Re *556 paint Metal Buildings and Repaint Interior Surfaces. There was an estimated quantity for each of the 16 items and a unit price per square foot or per lineal foot, as the case may be. Illustrative of the unit price contract, there is shown below the maimer in which the contractor was to be paid for one item of work:
CONTRACT NO. AF 09(608)-26991
SCHEDULE “C”
SCHEDULE OF ITEMS
REPAINT WOODEN BUILDINGS

Item Description Spec. Est. Unit Unit Total

No. - par. qty. price price
1_Repainting extended wood surfaces. 2-08 1823 SQ $4.95 $9,028.85
The total estimated price originally was $111,082.41. By change order No. 1, dated August 17, 1955, the contract price was increased to $138,853.01.
13. Work on the contract began on August 9,1955, and was completed about June 30, 1956. As the work progressed the contractor reported on worksheets the work accomplished periodically. The figures were checked by the government inspector on the job and the figures thus found to be correct were then made the basis for the submission of requests for progress payments which were made beginning September 30, 1955. Each request for progress payment was submitted over the signed certificate of a partner (usually Bentley) stating: “I certify that the above bill is correct and just and that payment therefor has not been received.” The bills were paid promptly upon submission.
14. The inspection reports were prepared each day work was performed on the contract by the government inspector. They were shown to the plaintiff’s representative on the job and signed by him. It is noted that Mr. Bentley usually signed the reports as that representative until April 22,1956. Beginning on that day, they were signed by Mr. Reid, who took over as superintendent when Mr. Bentley departed from the job. Mr. Bentley abandoned the job on or about April 22, *557 1956, and departed Macon, Georgia, and went to work on the St. Lawrence "Waterway. Mr. Markwalter was required to and did devote more time to the supervision. During the major portion of the work, Mr. Markwalter was present at the job-site only 2 or 3 hours every other day.
15. In July 1956, following completion of the contract, the contractor submitted to the contracting officer a “hardship” claim covering alleged additional work under the contract. This claim was for the total amount of $56,884.35 and was broken down into claimed additional work done for each building involved in the contract.
16. Under date of May 20, 1957, the contracting officer issued a decision allowing plaintiff’s claim to the extent of $444.60 representing an adjustment for the painting of the exposed rafters on dormitory buildings. The contracting officer advised the contractor that an appeal of his decision could be made under the “Disputes” clause of the contract within 30 days.
17. The contractor under date of June 7,1957, filed a notice of appeal of the contracting officer’s decision with the Armed Services Board of Contract Appeals.
18. The Armed Services Board of Contract Appeals held a full hearing on plaintiff’s claim and took testimony amounting to 884 pages. The plaintiff was represented at the hearing by competent attorneys. Following the hearing before the Armed Services Board of Contract Appeals, plaintiff filed an amended claim, divided into nine separate categories and in the total amount of $61,519.49.
19. On March 2,1959, the Armed Services Board of Contract Appeals rendered its decision on the plaintiff’s appeal, which bore ASBCA docket No. 4441, granting the plaintiff an equitable adjustment in the total amount of $16,595.14.
20. The hearing member of the ASBCA conducted an eminently fair hearing. Thirteen witnesses testified. A substantial number of documents were introduced in evidence. The Board, in its carefully documented opinion, considered each item of claim (a total of 15 claims). It allowed in part, four of the claims — the largest item of allowance on the claim relating to the use of aluminum asphalt paint on metal buildings. The amount allowed on that claim was $13,659.
*558 21. In May 1959, the parties entered into Supplemental Agreement No. 5 of the contract, which supplemental agreement increased the contract price in the amount of $16,595.14 as a result of the ASBCA decision. This supplemental agreement was executed by Mr. Markwalter on behalf of the plaintiff partnership. In accepting this supplemental agreement, Mr. Markwalter consented to release all claims against the government under the contract or any amendments thereof. The supplemental agreement provided, in pertinent part, as follows:
1. By changing the total contract price to read $155,-354.55 m lieu of $138,759.41, an increase of $16,595.14 as a result of Decision of the Armed Services Board of Contract Appeals, dated 2 March 1959, in ASBCA Nr. 4441.
2. Payment of this $16,595.14 will complete all payments allowed or to be allowed under this contract and will cut off any other claims of contractor against the Government under this contract or any amendments thereof.
22. Mr. Markwalter, on behalf of the partnership, entered into this release freely and upon advice of his attorney. By letter dated May 19, 1959, Mr. Markwalter’s attorney, Mr. Ellsworth Hall, Jr., advised Mr. Markwalter, in pertinent part, as follows:
You, of course, realize that receipt of this payment forecloses any other claims. I have determined that no interest is payable on this account. I have been informed by Mr. Vinson that he thinks any further effort to secure additional payment would be fruitless. I therefore believe it wise to accept this payment.
Plaintiff did not seek any judicial review of the decision of the ASBCA.
23. The plaintiff expended a total of $190,616.80 in performing the work under the contract in suit. It was paid a total (including the ASBCA award) of $155,354.55. Thus, there is no question that the plaintiff sustained large losses in the performance of the contract in suit.
24. The plaintiff has not shown either before the ASBCA or the commissioner, that the losses referred to above were caused by the acts of the government. The largest item of claim as has been said, related to the use of aluminum asphalt *559 paint. The ASBCA agreed with the plaintiff to the extent of $13,659 on that item of claim. At the trial before the commissioner, counsel for the plaintiff stated in reply to a question by defendant’s counsel :
Q. Is the Government correct in their assumption — and either Mr. Markwalter or Mr. Stirling can answer this— that the Plaintiff has no further evidence, showing how the Government was responsible for a specific cost or damages to the plaintiff ?
[Answer] We have no further evidence.
[Q] You have no evidence which .would contradict the evidence in the record and findings of the Board that certain factors were responsible for causing difficulties in this contract, factors which were outside the Government’s control?
[Answer] No.
25. There is no evidence in the record which shows that plaintiff was put to any additional expense by reason of the fact that notice to proceed with the work was not issued until August 3, 1955. It appears that on June 25, 1955, plaintiff was notified of the award of the contract. This latter notice provided that work shall be commenced within ten calendar days after date of receipt of notice to proceed.
26. The contract contained a provision by which the contracting officer could require the testing of samples of paint which was to be used in contract performance. The contracting officer did require the testing of paint samples. This matter is carefully reviewed in the ASBCA decision and the finding of that Board that the contracting officer did not abuse his authority in connection with the testing of paint is fully supported by the evidence.
27. The plaintiff encountered its greatest difficulty on the job in applying asphalt-aluminum paint. This type of paint, the proof shows, resembles roofing compound. It was applied to metal buildings. The plaintiff convinced the ASBCA that it was entitled to be paid an additional $13,659.14 on that claim, on the basis that this paint specification was faulty or subjecting the specification paint to an improper use. Although the plaintiff claimed a total of $23,000 on this item of claim, the Board on the sketchy evidence of damages presented, allowed only the amount indicated. The plaintiff does *560 not point to any testimony or document in the record to support a larger amount due it on this item of claim. The amount found by the Board is fully supported by the record.
28. After carefully reviewing the entire record of this case, including all of the testimony of the witnesses as well as all of the extensive documents herein, it is found that the plaintiff has been fully paid for all the work it accomplished and that the losses which it incurred over and above the contract price as amended due to the ASBCA award were not due to the acts of the government.
29. During the entire performance of work under the contract in suit, the defendant had its inspectors on the job. It was their function to inspect the work as it progressed and upon completion. Where the quality of the work did not measure up to specifications as they understood them, the plaintiff (through one of the partners, if present, or its assigned representative) was told by such inspector of the failure to conform to specifications and usually what was required for conformance. The inspectors performed their functions in a reasonable manner. There was no harassment of the plaintiff by the inspectors. There was no complaint about the inspection until the plaintiff began preparation of the claims against the government.
30. On the basis of the foregoing findings, it is found that the plaintiff has neither a legal nor an equitable claim against the United States.