By the Review Panel:
H.R. 4473, a “bill conferring jurisdiction upon the United States Court of Claims to hear, determine, and render judgment upon the claim of John T. Knight”, was referred by H. Res. 240, 92d Cong., 1st Sess., approved July 6, 1971, to the Chief Commissioner of the *1045 Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code, for further proceedings in accordance with applicable law “notwithstanding any statute of limitations pertaining to suits against the United States, or any lapse of time, or bars of laches * * *.”
The Chief Commissioner referred the case to Trial Commissioner C. Murray Bernhardt for proceedings in accordance with the applicable rules and designated the above-named members of the review panel to consider the trial commissioner’s opinion on the reference, the subject matter of which is plaintiff’s claim that his active service in the Army from 'May 1942 to October 1947 aggravated a preexisting deafness and thereby entitled him to disability retirement.
On February 13, 1973, the trial commissioner filed an opinion concluding that as a matter of “equity” plaintiff is entitled to disability retirement pay, less any appropriate off-sets, from and after October 20, 1947, and recommending that the Congress should direct the Comptroller General of the United States to compute and report to it the net amount due plaintiff. Defendant has timely excepted to the trial commissioner’s opinion, while plaintiff embraces that opinion “without reservation.”
The review panel has carefully considered the record, the trial commissioner’s opinion, defendant’s exceptions thereto, and the briefs and oral argument of the parties. Our conclusions in the matter are that plaintiff has no legal claim because of the bar of limitations; that, but for limitations, plaintiff would have a valid legal claim; that, in all the circumstances, waiver of the bar is equitable; and that, accordingly, plaintiff is entitled to Congressional relief.
I. The Terms of the Reference
Any claim plaintiff may have to disability retirement pay is admittedly barred by limitations. Knight v. United States, (order of the court reported in 163 Ct. Cl. 576 (1963)). See also Friedman v. United States, 159 Ct. Cl. 1, 310 F.2d 381 (1962), cert. denied, 373 U.S. 932 (1963); Lipp v. United States, 157 Ct. Cl. 197, 301 F.2d 674 (1962), cert. denied, 373 U.S. 932 (1963).
*1046 Plaintiff urges that the review panel “need not even concern itself with the Statute of Limitations or Laches”, since the House of Representatives “had obviously considered these points and decided them in favor of plaintiff.”[1] We disagree.
The “notwithstanding” clause in H. Res. 240 was intended, not as a direction to disregard any portion of 28 U.S.C. § 2509, but rather to insure that the Chief Commissioner’s report to the House of Representatives included findings and conclusions on the merits of the matter, not simply a finding that limitations is a bar.
The reference and its legislative history make it quite clear that, whatever conclusions might be reached as to delay, laches, limitations, or exhaustion of remedies, the House of Representatives intended that the Chief Commissioner’s report to it should also encompass the question whether, apart from such considerations, plaintiff’s “demand is a legal or equitable claim or a gratuity * *
II. The Merits of Plaintiff’s Demand
Following plaintiff’s resignation from the Regular Army January 10, 1920, he became partially deafened to a permanent degree, as a result of injuries sustained in combat September 12,1918, in France. About 1929 he began to wear a hearing aid, and in October 1930, the VA awarded him compensation for service-connected disability (56 percent temporary partial for otitis media,[2] chronic, catarrhal, both ears), apparently under a 1925 Veterans’ Bureau schedule for rating disabilities.[3]
In February 1942 plaintiff, then nearly 48 years of age, was physically examined for appointment in the Army of the United States. The report of that examination reflected that plaintiff was permanently incapacitated for active service, and his rejection by reason of defective hearing was recommended. In March 1942 he was again physically examined for such appointment and was again found permanently incapacitated for active service. Audiometric testing then re *1047 vealed a bearing loss (44.8 percent in tbe right ear and 49 percent in tbe left ear) deemed stationary in character. He was recommended for limited service only, with a waiver.
In April 1942, following plaintiff’s written acknowledgement of bis bilateral defective bearing (and sinusitis) and bis statement of desire to enter active military service, tbe Surgeon General recommended a waiver for “audiometer finding of defective bearing * * *” and sinusitis, and on April 23, 1942, orders were issued waiving plaintiff’s said “physical defects” and appointing him a major, Army of tbe United States.[4] He entered on active duty as such May 8, 1942.
At tbe time of plaintiff’s entry on active duty, be was functioning sufficiently well, even with impaired bearing, to succeed in bis civilian engineering business. Without using a bearing aid, be was able to bear telephones ring, doors and windows open and close, footsteps, voices, outside noises such as storms, and tbe sound of running water.
Plaintiff served on active duty from May 8, 1942, being promoted to lieutenant colonel in November 1942 and to colonel July 1, 1944, continuously to October 19, 1947, when be was relieved from active duty by reason of physical disability but without retirement pay, under circumstances hereinafter set forth. His service from May 1942 to October 1947 was uniformly rated as superior.
To about May 1944, plaintiff served in engineering assignments in tbe United States. From about May 1944 to May 1947 be served in South America, eventually becoming Theater Engineer, United States Army Forces South America, with responsibility for all engineering projects in a broad area of that continent. In South America be frequently flew in military aircraft, usually operating at 'high altitudes, uninsulated for temperature changes, and without protection against air pressure variation. He was subjected to marked *1048 changes in climatic conditions and air pressure, often in rapid succession.
In May 1947, plaintiff returned to the United States, and shortly thereafter he was transferred to Walter Heed General Hospital for evaluation, treatment ¡and disposition.
At Walter Keed General Hospital, plaintiff underwent several physical examinations, was the subject of a Disposition Board proceeding, and on July 11,1947, appeared before an Army Retiring Board. The findings and conclusions (essentially consistent except for minor variations in terms of hearing loss in decibels 'as measured at different times) were that plaintiff was permanently incapacitated for active military service by reason of bilateral moderate deafness, conductive type, caused by shell explosions during World War I; [5] that his incapacitating defect had originated September 12, 1918; that he had become incapacitated for active service May 8, 1942; that the cause of his permanent incapacity was not an incident of service and had not been permanently aggravated by military service; and that the said incapacity was not the result of an incident of service.
In connection with the finding of lack of aggravation by plaintiff’s World War II active service, it appears from both plaintiff’s “Retirement” physical examination of June 21, 1947, and the testimony of the medical witnesses before plaintiff’s July 11, 1947 Army Retiring Board, that there had been a permanent increase in plaintiff’s deafness following his entry on active duty May 8, 1942. The medical witnesses were of the view, however, that the increased deafness was “easily the result of natural progression of a pre-existing disease”, termed otosclerosis (the formation of spongy bone in the capsule of the labyrinth of the ear), the “natural course of” which was to progress.
The Surgeon General concurred in the Army Retiring Board’s findings, adding that plaintiff was physically unfit even for limited service, and in August 1947 the Retiring Board proceedings were approved by order of the Secretary of War. On October 19, 1947, plaintiff was relieved from *1049 active duty, in the grade of colonel, by reason of physical disability, but without disability retirement pay.
In November 1950, on plaintiff’s application, the Army Disability Review Board reviewed plaintiff’s case. Plaintiff declined to appear before the Disability Review Board. After considering the matter, the Disability Review Board reversed all findings of plaintiff’s 1947 Army Retiring Board and the Secretary of War’s approval of the Retiring Board proceedings, and found plaintiff not permanently incapacitated for active military service. The basis for this conclusion does not appear in the record.
In December 1955, plaintiff applied to the Army Board for Correction of Military Records. After an initial denial of plaintiff’s application, without hearing, in 1956, the Correction Board heard plaintiff’s case in May 1957 and again denied his application, in substance on the ground that “the records did not substantiate a finding that he was entitled to disability retirement pay by reason of permanent aggravation of a pre-existing disability.” [6]
Plaintiff was in fact permanently incapacitated for active service on October 19, 1947. In the circumstances of this case, the pivotal issue on the merits is whether or not the conceded “unfavorable progress” of plaintiff’s deafness during his active military service from 1942 to 1947 gives rise to a good claim (limitations aside) to disability retirement pay. See Dickson v. United States, 159 Ct. Cl. 185 (1962).
Plaintiff had substantially impaired hearing in May 1942. While plaintiff’s worsened hearing in 1947 may have been the result of “natural progress” of the disease from which he suffered in 1942, there are no “specific findings”, based upon “well-established medical principles”, that plaintiff’s defective hearing as it existed in 1942 was not aggravated by his subsequent military service. In the circumstances, the regulatory presumption of service aggravation of plaintiff’s defective hearing has clearly not been overcome. See Lipp v. United States, 181 Ct. Cl. 355 (1967); Reese v. United States, *1050 180 Ct. Cl. 932 (1967); Siegel v. United States, 148 Ct. Cl. 420 (1960).
Tbe precise inquiry which emerges from all this is whether plaintiff, as an incident of his extended active duty during World War II, sustained “permanent additional disability as the result of the aggravation of his pre-existing disease, injury or infirmity * * Paragraphs 23f, 24, 42, War Department Technical Manual TM 12-245, 1 October 1945; see also Register v. United States, 131 Ct. Cl. 98 (1955); cf. Grubin v. United States, 166 Ct. Cl. 272, 333 F.2d 861 (1964); Wiley v. United States, 165 Ct. Cl. 261 (1964). On this record, it is clear that an affirmative resolution of that issue is required.
The medical witnesses before plaintiff’s 1947 Army Retiring Board, and the Surgeon General of the Army, contemporaneously recognized that plaintiff’s deafness had progressed during his World War II active service. Indeed, the Surgeon General added in 1947 that plaintiff was unfit even for limited military service. Denial of a finding of service aggravation rested on a mere belief (so far as the record shows) of “natural progress”, and medical opinion alone wholly fails to overcome the regulatory presumption of service-aggravation. Lipp v. United States, supra, 181 Ct. Cl. at 359-63; Reese v. United States, supra; Siegel v. United States, supra.
While comparisons of the results of plaintiff’s hearing examinations from time to time are both difficult and somewhat unreliable, the fact of permanent, service-aggravated, additional disability between 1942 and 1947 is abundantly clear. Accordingly, but for limitations, plaintiff would have a valid claim to disability retirement pay (at appropriate rates and less any appropriate offsets) from and after October 20, 1947.
III. Delay, Laches and Limitations
Defendant urges, and plaintiff concedes, that the claim herein is barred by limitations. Plaintiff undeniably failed to bring an action in the United States Court of Claims for disability retirement pay within 6 years following October 19, 1947. In this Congressional Reference, however, the *1051 real inquiry is whether his failure to do so should be excused. In all the circumstances, the review panel is of the opinion that it should.
Within 3 years following his separation from the Army for physical disability, but without disability retirement pay, plaintiff commenced vigorous, and persistent, efforts to obtain redress for what he deemed to be a wrong. He applied to the Army Disability Review Board in 1950, then sought correction of his records in 1955, and again in 1957. In 1960, he filed suit in the United States Court of Claims. In 1961, on defendant’s motion to dismiss, the Court of Claims held that his claim was timely. Knight v. United States, 152 Ct. Cl. 298 (1961).
Plaintiff’s claim then proceeded to trial April 9, 1962. Just 5 days earlier, however, the court’s prior decision in Knight was expressly overruled. Lipp v. United States, supra, 157 Ct. Cl. at 200, 301 F.2d at 675. See also Friedman v. United States, supra. Thus, in 1963, plaintiff’s petition in the Court of Claims was dismissed without decision on the merits.
Even before invoking his supposed judicial remedy, plaintiff had also sought Congressional relief. In June 1962, however, Glidden v. Zdanok, 370 U.S. 530 (1962) led, in practice, to the court’s refusal to accept further references from either House of Congress. See Bentley v. United States, 189 Ct. Cl. 547, 550 (1969).[7] From 1962 to October 15, 1966, when the present Congressional Reference procedure was enacted into law, no legal remedies were available to plaintiff, nor was relief via Congressional Reference procedures possible. Notwithstanding, persistent legislative efforts in his behalf continued in and after 1963, finally culminating in the present reference.
While defendant tacitly concedes that plaintiff may not have been “sleeping on his rights” from and after 1963, it asserts that that same conclusion is not merited with respect to the period October 1947 to 1960. The argument is unpersuasive here.
*1052 For a considerable period of time after 1947, it was by no means clear that any judicial remedy was available to one in plaintiff’s situation. As late as 1958, the jurisdiction of the Court of Claims “to determine whether the acts and decisions of the retiring boards and the disability review board in plaintiff’s case were arbitrary, capricious and not supported by the facts contained in the record before them” was seriously challenged by the government. Brown v. United States, 143 Ct. Cl. 605, 607 (1958).
Too, the Congress having provided plaintiff speedy and inexpensive administrative avenues by which he might pursue his claim of right to disability retirement pay, he can scarcely be faulted for taking advantage of them, particularly in view of the possible adverse effect upon him failure to do so might have. See Lipp v. United States, supra, 157 Ct. Cl. at 200, 301 F.2d at 675. It is, moreover, worthy of repetition that when plaintiff did institute his judicial action in 1960, that action was then deemed timely. Knight v. United States, supra.
In view of all the facts and circumstances, we conclude that plaintiff’s failure to commence court action within 6 years following October 19,1947, is excusable, and that the bar of limitations should be lifted in this instance.
Accordingly, it is concluded that, but for the statute of limitations, plaintiff would have a legal claim against the United States to disability retirement pay, and that, on the facts of this cause, the lifting of the bar of limitations is appropriate.
In the 1962 trial, the amount plaintiff might be due was not considered. Either a stipulation of the parties as to the disability retirement pay due plaintiff (and the appropriate offsets thereto), a computation thereof by the General Accounting Office, or if necessary further proceedings before the Chief Commissioner (see Kule 131(c), Rules of the United States Court of Claims) would be appropriate means of resolving that issue.[8]
*1053 Findings op Fact
1. This matter has been referred to the Chief Commissioner of the Court of Claims by H. Res. 240, 92d Cong., 1st Sess., approved July 6,1971, and providing in part that:
* * * H.R. 4473 entitled £A bill conferring jurisdiction upon the United States Court of Claims to hear, determine, and render judgment upon the claim of John T. Knight’, * * * is hereby referred to the Chief Commissioner of the Court of Claims notwithstanding any statute of limitations pertaining to suits against the United States, or any lapse of time, or hars of laches, and pursuant to sections 1492 and 2509 of title 28, United States Code, for further proceedings in accordance with applicable law.
The emphasized language in H. Res. 240 was added in committee. See finding 2(b).
2. (a) H.R. 4473, 92d Cong., 1st Sess., provides in part that “notwithstanding any statute of limitations * * *, or any lapse of time, or bars of laches, jurisdiction is hereby conferred upon the United States Court of Claims to hear, determine, and render judgment upon any claim of John T. Knight * * * arising out of his claim against the United States for disability retirement pay for a disability allegedly incurred or aggravated while serving in the Armed Forces of the United States.”
(b) H. Rep. No. 92-171, 92d Cong., 1st Sess., to accompany H. Res. 240, reflects in part that since 28 U.S.C. § 2509 directs inclusion in a Congressional Reference report of facts relating to delay or laches, facts bearing on the question whether the bar of any statute of limitations should be removed, or facts claimed to excuse the claimant from not having resorted to any established legal remedy, H. Res. 240 as originally introduced “would result in findings and recommendations concerning * * * waivers [of any statute of limitations, lapse of time, or bars of laches] * * H. Rep. No. 92-171 further reflects, however, that:
The committee also feels that the Congress should have the benefit of findings of fact concerning the other aspects of the claim. Since the bill H.R. 4473 is a jurisdictional bill and would merely permit consideration of the claim, the committee desires to make it clear that the *1054 reference resolution contemplates a full investigation of the matter. The bar of a statute of limitations or of delay or laches might prevent such a consideration of a matter in the judicial consideration of a case. In order to insure a complete consideration of this reference case, the committee has recommended an amendment so that the proceedings will include a consideration of the matter as if the statute of limitations, lapse of time or bars of laches were not applicable.
3. (a) Plaintiff was born May 9, 1894, in Oklahoma. He graduated from the United States Military Academy in 1917. He was commissioned a second lieutenant, Regular Army, August 30, 1917. He served on active duty in the Regular Army, being promoted to first lieutenant February 27,1918, and to captain (temporary) November 6,1918, to January 10, 1920, when he resigned therefrom.
(b) On September 12,1918, plaintiff received head wounds in combat in France. He was hospitalized to September 20, 1918, when he returned to duty. Neither his September 1918 record of hospitalization, an October 1918 report of physical examination, nor a January 8,1920 report of physical examination in connection with his resignation contains any indication of deafness or any other physical disability.
(c) As a result of the injuries he suffered in combat September 12, 1918, and commencing after January 10, 1920, plaintiff was partially deafened to a permanent degree.
4. Plaintiff accepted an appointment as captain, Field Artillery, Officers’ Reserve Corps, November 19, 1921. In an application of November 2, 1921, for such appointment, he certified to the absence of any form of disease or injury which would interfere with his full performance of duties as a Reserve officer. A physical examination of July 22,1928, in connection with Reserve active duty from July 22 to August 4, 1928, reflects that he was physically qualified for active field service. He served in the Officers’ Reserve Corps and in the Illinois National Guard to May 23, 1930, resigning from the latter organization on moving to Massachusetts.
5. During the years 1920-42, plaintiff was privately employed as a construction engineer, and in management for *1055 various companies. He began to wear a bearing aid about 1929. Despite impaired bearing during most of the period ending in 1942, he functioned sufficiently well to advance to a position as consulting engineer and senior partner in an engineering firm, and be was able, without using a bearing aid, to bear telephones ring, doors and windows open and close, footsteps, voices, outside noises such as storms, and the sound of running water.
6. (a) In 19B0, pursuant to plaintiff’s application, the Veterans Administration (“VA”) awarded plaintiff compensation for service connected disability as follows: “56% temporary partial from October 15, 1930 for otitis media, chronic, catarrhal; right ear 3/40ths; left ear 10/40ths. Variant: Ear, 8 (with tinnitus audium * * *.)” A VA rating of October 3, 1935 “shows diagnosis as otitis media, chronic, catarrhal, (no tinnitus), hearing five feet, and two feet, 40 percent from September 17,1935.” A VA rating of November 10, 1938, reduced his compensation from 40 percent to 10 percent. A VA rating of May 26, 1941, showed “chronic catarrhal otitis media, partial deafness (hearing right 5/20, left 5/20. Tinnitus.) Variant: Ears 8.-63 percent from April 30,1941.”
(b) The VA ratings referred to in finding 6(a) were apparently made under a 1925 Veterans Bureau schedule for rating disabilities.
(c) A VA rating of February 18,1948, following promulgation of the VA Schedule for Eating Disabilities, 1945 Edition, “gives diagnostic code of 6257. PP [permanent partial] 63 percent — 1925 Eating Schedule, and 30 percent 1945 Eating Schedule from October 20,1947.”
(d) The record fails to explain why plaintiff’s disability, as of October 1947, received a higher rating under the 1925 rating schedule than it did under the 1945 VA schedule.[1]
(e) On April 30, 1948, plaintiff underwent a physical examination at the VA Eegional Office, New Orleans, Louisiana. An audiogram revealed hearing loss of 98.7 percent in the right ear, of 95.3 percent in the left ear, and of 95.7 *1056 percent in both. ears. The “ENT [ear, nose and throat] Report” reflects that plaintiff’s heax-ing was “much worse in recent years and during World War IIthat with a hearing aid with bone conduction receiver to either ear plaintiff could hear ordinary conversational voices at 20 feet; and that without a hearing aid, he could hear ordinary conversational voices only a few inches from either ear.
7. (a) On February 26;, 1942, at LaGarde General Hospital, New Orleans, Louisiana, plaintiff was physically examined for appointment in the Army of the United States. His rejection by reason of defective hearing was recommended. The report of this examination reflects that “With bone conduction hearing aid hearing 18/20. Hearing '(low conversational voice) : Right *4/20. Left 14/20. Audiometer (percent loss) * * * Not Done” and that plaintiff was permanently incapacitated for active service.
(b) On March 14, 1942, at Fort McPherson, Georgia, plaintiff was again physically examined for appointment in the Army of the United States. The report of this examination reflects that plaintiff did not meet physical requirements for appointment, that his acceptance with minor physical defects was not recommended, that he was permanently incapacitated for active service, and that his defects were “Defective hearing bilateral. Hearing: (taken with earphone (bone conduction)) Right 20/20, Left 20/20. Audiometer (percent loss) : Right 44.8, Left 49”, stationary in character, and chronic sinusitis. He was recommended for limited service only, with a waiver of the said defects.
(c) On March 14, 1942, plaintiff indicated in writing his desire to enter active military service and his awareness of his bilateral defective hearing (as described in finding 7(b)) and chronic sinusitis, acknowledged existence of the said “physical defects”, and requested that he be placed on extended active duty.
(d) On April 18,1942, the Surgeon General recommended to the Adjutant General a waiver “for audiometer finding of defective hearing * * *” and sinusitis, and on April 28, 1942, orders were issued waiving plaintiff’s said “physical defects” and appointing him a major, Army of the United *1057 States.[2] Plaintiff entered on active duty as a major, Army of the United States, May 8,1942.
8. (a) Plaintiff served on active duty from May 8, 1942, being promoted to lieutenant colonel November 5,1942, and to colonel July 1, 1944, continuously to October 19, 1947, when he was relieved from active duty by reason of physical disability, but without disability retirement pay. His temporary commission terminated June 30,1948, and he has had no military status since that date.
(b) Plaintiff’s efficiency reports from 1942 to 1947 uniformly rated him superior. For service during World Wars I and II he was awarded (inter alia) the Distinguished Service Cross, the Legion of Merit, the Army Commendation Medal, the Purple Heart, and a Brazilian medal.
9. (a) A report of “Final Type” physical examination April 24,1944, at the Station Hospital, Bluethenthal Field, Wilmington, North Carolina, reflects that plaintiff’s hearing (low conversational voice) was “Eight 0/20. Left 0/20”, and, with hearing aid, right ear 20/20 and left ear 4/20. Accompanying remarks stated that plaintiff’s auditory acuity had become progressively worse since 1918, that he had been able to perform active and full duty with his present physical defect, and that the auditory defect was “now static * * Audiometer readings apparently were not then taken.
(b) A report of “Flying Status” physical examination May 2,1944, at the Flight Surgeon’s Office, Army Air Forces Training Center #1, Miami Beach, Florida, reflects that plaintiff’s hearing (whisper) was right ear 0/20, left ear 0/20. The said report further reflects as follows: “Audiometer (percent loss) : E. 40.70% L. 60.80%”. Accompanying remarks stated that plaintiff “is wearing hearing aids which correct his hearing to 20/20, bilateral.”
(c) On June 2,1944, plaintiff requested the Commanding General, United States Army Forces South Atlantic, to take *1058 the necessary action to obtain a waiver of physical disability and reclassification for general service, based upon the following facts:
A. I wear a hearing aid which corrects my hearing to OA /QA Till Q 1
B. The report of the Flight Surgeon * * * dated 2 May 1944, attached, indicates:
(1) That waiver of physical disability by The Adjutant General is recommended.
(21 That I am not incapacitated for active service.
(3) That I have no other physical disability other than impaired hearing, which is corrected by use of a hearing aid, and that I am otherwise qualified.
The request was denied.
10. From May 8, 1942 to about May 1, 1944, plaintiff served as Executive Officer and as District Engineer of the Wilmington, North Carolina, United States Engineer’s Office. From about May 8, 1944 to May 1947, he served in South America, first as District Engineer at Recife, Per-nambuco, Brazil, and then as Theater Engineer, United States Army Forces South America, with responsibility for all engineering projects in Brazil, Uruguay, Paraguay, and east to the Ascension Island. In his capacity as Theater Engineer, he duly and frequently flew in many different types of military aircraft, usually operating at high altitudes, uninsulated for temperature changes, and without protection against air pressure variations. Because of his frequent flights to units and installations under his jurisdiction in South America, plaintiff was subjected to marked changes in climatic conditions and air pressure, often in rapid succession. Plaintiff testified that these conditions, plus the noise of World War II military aircraft, produced earaches and increased ringing in his ears, caused frequent head colds, and impaired his hearing. The documents in evidence do not include any contemporaneous medical records reflecting complaints by plaintiff of, or treatment for, any such conditions while in South America.
11. In May 1947 plaintiff returned to the United States. He was hospitalized at Morrison Field General Hospital, Palm Beach, Florida, with a diagnosis of severe bilateral *1059 deafness, from. May 8 to May 18, 1947. On May 14, 1947, he was transferred to Walter Need General Hospital, Washington, D.C., for evaluation, treatment, and disposition.
12. (a) An ENT (ear, nose and throat) examination at Walter Need General Hospital May 15, 1947, resulted in a diagnosis of deafness, conductive, bilateral, moderate, caused by shell explosions in World War I. Plaintiff’s hearing was recorded as “AH [right ear]: 0/20, 0/15, 58 db. [decibel] loss; AS [left ear] : 0/20, 0/15, 65 db. loss. Speech reception score: 58Db. loss. LOH No, EPTEAD [line of duty, no, existed prior to entry on active duty].”
(b) An examination at Walter Need General Hospital May 19, 1947, “revealed 0/20 bilaterally and the average decibel loss in the speech ranges was 65 decibels, right and 74, left.”
(c) On June 18,1947, a Disposition Board at Walter Reed General Hospital found that plaintiff suffered from “Deafness, conductive type, bilateral, moderate, caused by shell explosions during World War I. Hearing: AD: 0/20, 0/15, 58 decibels loss; AS: 0/20, 0/15, 65 decibels loss. Speech reception score: 68 decibels loss. Unchanged. LOD, no, EPTEAD.” The Disposition Board further found that plaintiff had become incapacitated for military duty May 8, 1942; that the approximate date of origin of his incapacity was September 12,1918; that the cause of his incapacity was not incident to service, but had existed prior to entry on active duty; that it had not been permanently aggravated by active duty; and that the degree of disability for military service was “partial” and “permanent”. The Disposition Board recommended that plaintiff be ordered to appear before an Army Retiring Board.
13. Plaintiff underwent a “Retirement” physical examination at Walter Reed General Hospital June 21, 1947. The report of that examination, incorporating the diagnosis made by the Disposition Board June 18,1947 (finding 12(c)) reflects that plaintiff was permanently incapacitated for general military service by reason of deafness; that the said deafness had originated September 12, 1918, and was not incident to service; that plaintiff had become incapacitated *1060 for general military service on or about May 8, 1942; and that:
There has been a permanent increase in this officer’s disability since 8 May 1942 when he came on active duty as an officer. Such increase is not the result of permanent aggravation by his service as an officer. Such increase is due to the mere natural progress of the disease, injury, or infirmity. * * *
Plaintiff’s “Retirement” was recommended.
14. (a) Plaintiff appeared before an Army Retiring Board convened at Walter Reed General Hospital July 11, 1947. Plaintiff testified to a permanent increase in his deafness following May 8,1942.
(b) One of the medical witnesses before the said Retiring Board testified that “The increase in deafness which occurred since entry on active duty is easily the result of natural progression of a pre-existing disease. The picture which this officer presents actually is a picture of otosclerosis. The natural course of otosclerosis is to progress.” When asked by counsel for plaintiff whether there was any aggravation, the medical witness responded that “I believe this could very easily be merely a natural progression of his pre-existing deafness. His hearing was 0/20, both ears, when commissioned * * * with a waiver for hearing. * * * I cannot conceive how his deafness could have been aggravated by service as an officer.” The medical witness further testified that plaintiff was permanently incapacitated for active service; that the incapacitating defect had originated September 12, 1918; that plaintiff had become incapacitated for active service May 8,1942; that the cause of his incapacity was not an incident of service; that he did not believe the cause of the incapacity had been permanently aggravated by military service; and that the incapacity was not the result of an incident of service. The second medical witness was in full agreement with the foregoing testimony.
(c) The said Retiring Board found that plaintiff was permanently incapacitated for active service; that the cause of such incapacity was “Deafness, conductive type, bilateral, moderate, cause [sic] by shell explosions during World War I. Hearing: AD: 0/20,0/15,58 decibels loss; AS: 0/20,0/15, *1061 65 decibels loss. Speech reception score: 68 decibels loss. Unchanged. Line of duty: No, EPTEAD”; that the approximate date of origin or inception of the said “incapacitating defect” was September 12, 1918; that he became incapacitated for active service May 8,1942; that the cause of such incapacity was not an incident of service; that the cause of the incapacity had not been permanently aggravated by military service; and that the said incapacity was not the result of an incident of service.
(d) On July 24, 1947, the Surgeon General advised the Adjutant General that:
1. This office concurs in the findings of the board to the effect that this officer is permanently incapacitated for active service. Incapacity is not the result of an incident of service.
2. Physically unfit for limited service.
3. Not combat incurred or result of explosion of instrumentality of war in LOD.
(e) On August 13,1947, the said Ketiring Board proceedings were approved by the Adjutant General by order of the Secretary of War.
(f) On August 13, 1947, the Adjutant General notified plaintiff that:
1. The Secretary of War directs me to inform you that the findings of the Army Ketiring Board convened in your case have been approved. It having been determined that your physical incapacity was not incurred in line of duty while on active duty as a commissioned officer, you are not entitled to retirement pay benefits under the Act of 3 April 1939.
2. You are considered by the War Department to be permanently physically incapacitated for active military service.

X X X XX

Plaintiff was relieved from active duty effective October 19,1947, by reason of physical disability.
15. (a) On September 23, 1950, plaintiff applied to the Army Disability Keview Board for review of his 1947 Army Ketiring Board proceedings. Plaintiff asserted, inter alia, that his deafness had markedly progressed during his World War II active service, and had been aggravated thereby, and *1062 that the Army Retiring Board had erred in failing to apply “the presumption of service aggravation * * *” in his case.
(b) The Army Disability Review Board convened in Washington, D.C., November 21, 1950, to consider plaintiff’s application. Plaintiff declined to appear either personally or by counsel. The Disability Review Board considered plaintiff’s 1947 Army Retiring Board proceedings, plaintiff’s brief to the Disability Review Board, plaintiff’s Army clinical file, x-rays, and several letters from private physicians who had examined plaintiff. The Disability Review Board (1) reversed all findings of plaintiff’s 1947 Army Retiring Board and the August 13, 1947 approval by the Secretary of War of the findings of the said Retiring Board, and (2) found that plaintiff “is not permanently incapacitated for active service.” The reasoning underlying the Disability Review Board’s reversal of the prior administrative findings and action, and the making of its stated finding, does not appear from the record.
(c) The proceedings of the Army Disability Review Board were approved by the Adjutant General, by direction of the President, and by order of the Secretary of the Army, November 21,1950.
16. (a) On December 8, 1955, plaintiff filed an application with the Army Board for Correction of Military Records (“Correction Board”) requesting:
That my separation from the service by reason of physical disability EPTS [existed prior to service] and the finding of the Disability Review Board that I am not permanently incapacitated for active service be changed to show that I am permanently incapacitated for active service and that such incapacity is incident to service having been precipitated by wounds received in combat in World War I, as well as being aggravated by military service in World War II.
(b) On March 13,1956, the Surgeon General, at the request of the Correction Board, furnished “comment and opinion” in pertinent part as follows:
3. “In 1942, [plaintiff] was accepted for active duty with waiver of his hearing defect and he served during the period 1942-1947, in the Western Hemisphere in engineer construction type work without difficulty.
*1063 4. “At the time of his separation in 1947, the question was raised as to the degree of unfavorable progress of the deafness during this period of active duty. The records indicate that there was some unfavorable progress of the condition during the period 1942-1947.
5. “It is believed that the degree of unfavorable progress of the deafness is consistent with natural progress of the condition. The records are believed not to substantiate any sudden or abrupt pathological change or sudden worsening of the condition. In addition, it is believed that the records do not substantiate an added increase of 30% or more over and above the degree of impairment existing at the time this officer was accepted for duty in 1942.
(c) On May 9, 1956, the Correction Board denied plaintiff’s application for correction of military record, without hearing, on the ground that “insufficient evidence has been presented to indicate probable material error or injustice.” Plaintiff was so advised by letter dated May 22, 1956.
17. (a) On March 12,1957, plaintiff requested reconsideration of his application for correction of military record, and on that same date the Correction Board was duly directed to grant plaintiff a formal hearing.
(b) A hearing was held before the Correction Board May 15, 1957. Plaintiff and his counsel were present. The hearing transcript consists of 82 pages. The Correction Board considered the testimony of plaintiff, the arguments of his counsel, a detailed case summary prepared by a Correction Board examiner, plaintiff’s military and VA medical records, and the Surgeon General’s 1956 opinion. The Correction Board record of proceedings reflects the “factual showing of the Department of the Army records” (including plaintiff’s Army Retiring Board and Army Disability Review Board proceedings), plaintiff’s VA disability ratings, and the Surgeon General’s March 13, 1956 opinion (finding 16 (b)). The Correction Board concluded that it “concurs in the opinion expressed by The Surgeon General’s Office on 13 March 1956 that at the time of the applicant’s separation from the service on 19 October 1947, the records did not substantiate a finding that he was entitled to disability retirement pay by reason of permanent aggravation of a pre *1064 existing disability.” The Correction Board recommended that plaintiff’s application be denied.
(c) On September 17, 1957, prior to acting on the Correction Board’s said recommendation, the Assistant Secretary of the Army returned the case to the Correction Board for further consideration and recommendation whether plaintiff’s retirement in the grade of captain for World War I injuries alone was warranted. On October 2, 1957, the Surgeon General advised that at the time of plaintiff’s resignation from the Army January 10, 1920, there was no evidence of any disability which rendered him permanently unfit for military duty. On October 24,1957, the Correction Board reconvened, reconsidered the case in the light of the Assistant Secretary’s request, concurred in the Surgeon General’s October 2, 1957 advice, concluded that in view of its said concurrence and its May 20,1957 findings plaintiff “was not eligible for retirement from active service by reason of physical disability,” and again recommended denial of his application. The Assistant Secretary of the Army approved the Correction Board’s recommendation July 7, 1958, and plaintiff was subsequently so advised.
18. In a letter from the Secretary of the Army, dated May 29, 1959, addressed to the Chairman, House Committee on Armed Services, and cleared by the Bureau of the Budget, in connection with proposed legislative relief for plaintiff, the Secretary stated:
* * * While there was some degree of progress in his deafness during this service, and even presuming that such progress was incident to such service in line of duty, it nevertheless was not of sufficient magnitude to render him incapable of performing his duties. As he had entered on active duty for limited service only, with an express waiver of his hearing defect, the finding of the Disposition Board that he was incapacitated for general service applied an incorrect standard, and was therefore in error. The Retiring Board likewise erred in finding that he was permanently incapacitated for active service. In short, the decision of the Disability Review Board simply reversed these erroneous determinations, and, under the circumstances of this case, properly found that he was not incapacitated. Finally, the Army Board for Correction of Military Records has considered the entire matter on three occasions and found no error or *1065 injustice which would warrant correcting his records to show him entitled to retirement for physical disability. [Emphasis in original.]
19. A conductive type of hearing loss, with which plaintiff was afflicted in 1942, may result from chronic catarrhal otitis media (an inflammation of the middle ear), or from oto-sclerosis (the formation of spongy bone in the capsule of the labyrinth of the ear). From time to time plaintiff’s condition has been deemed due to otitis media, while at other times it has been deemed due to otosclerosis.
20. (a) The evidence of record as to the normal course of conductive deafness due to either cause is sparse. Dr. Sam Zurich, a qualified specialist in ear diseases, testified at trial in 1962 (see finding 25 (d), infra) that the progress of oto-sclerosis was absolutely unpredictable. He could not say, in terms of otosclerosis, what natural progression would mean. Otitis media too, might, he testified, remain stationary over a period of years. While he could not say with any certainty just what factors would aggravate either disease, he thought it at least possible that plaintiff’s hearing defect was aggravated by his military service from 1942 to 1947. Other medical evidence in the record is to the effect that it cannot be said with any degree of certainty whether or not plaintiff’s active service during World War II did or did not aggravate his loss of hearing.
(b) The results of plaintiff’s hearing examinations from 1930-48 cannot really be compared with any degree of accuracy or assurance, in part because of the unreliability of rating hearing loss by use of an audiometer throughout that period, and also because the precise method of reporting hearing loss in each instance is not ascertainable. Efforts at trial in 1962 to reconcile the disparate readings by converting them to some standard basis failed.
21. (a) There is substantial evidence in plaintiff’s Army medical records that his hearing defect worsened during his 1942-47 active service. His June 21,1947 “Retirement” physical examination reflects “a permanent increase in this officer’s disability since 8 May 1942 when he came on active duty as an officer” (finding 13); the medical witnesses before the July 11,1947 Army Retiring Board testified to an “increase *1066 in deafness which, occurred since entry on active duty * * *” (finding 14(b)); the Surgeon General deemed him unfit for even limited service in 1947, and, in 1956, stated that plaintiff’s “records indicate that there was some unfavorable progress of the condition during the period 1942-1947” (findings 14(d), 16(b)); and the Secretary of the Army, in May 1959, also stated that “there was some degree of progress in his deafness during this service * * *” (finding 18).
(b) The record overwhelmingly establishes that plaintiff was permanently incapacitated for active military service by reason of physical disability (hearing impairment) on October 19,1947. The contrary, unexplained, finding of the Army Disability [Review Board in 1950 is grossly erroneous, arbitrary, capricious, and unsupported by any evidence.
22. Notwithstanding the facts summarized in finding 21(a), and the results of the YA examination set forth in finding 6(e), plaintiff’s YA rating was not increased upon his separation from active service in October 1947 and, so far as this record shows, such rating has not been increased at any time thereafter.
23. There are no “specific findings”, based upon “well-established medical principles,” that plaintiff’s defective hearing as it existed in 1942 was not aggravated by his subsequent military service. Plaintiff’s worsened hearing in 1947 may have been the result of “natural progress” of the disease from which he suffered in 1942, but only medical judgment alone so suggests on this record.
24. War Department Technical Manual TM 12-245, 1 October 1945, provides in part as follows:
23. Nature of permanent incapacity for active service. *****
f. An officer who was placed in the administrative status of permanent limited service when he entered on active duty is eligible for retirement benefits for disability if he thereafter sustains, as an incident of his service, permanent additional disability as the result of the aggravation of his pre-existing disease, injury or infirmity; however, no such entitlement may be predicated upon additional disability resulting from the natural progress of his existing disease, injury or infirmity in the absence of a permanent service connected aggravation.
*1067 24. Nature of incident of service.
jJs *f* H»
b. A permanent incapacity for active service is the result of an incident of service * * * if it is earned by an incident of service or if the cause of the incapacity, that is the disease, injury or infirmity, has been permanently aggravated by military service.
c. An incapacity for active service will be presumed to be in line of duty and thus to be the result of an incident of service unless it is established beyond a reasonable doubt that the disease, injury or infirmity which is the cause thereof:
❖ * * # ❖
(4) Existed prior to the individual’s entry upon active military service and was not aggravated by such service.
‡ $
42. Interpretation of the act of 3 April 1939.
a. Entitlement to receive the retirement pay benefits provided by section 5 of the act of 3 April 1939 (53 Stat. 557), as amended * * * must be predicated upon disease, injury or infirmity resulting in permanent disability which was incurred in line of duty while on active service on or after 3 April 1939, or upon an additional permanent disability resulting from aggravation incident to such service of a disease, injury or infirmity which was not itself an incident of service.
25. (a) On February 25, 1960, plaintiff filed an action in the United States Court of Claims (Docket No. 64-60) seeking disability retirement pay from October 20,1947.
(b) On July 7,1960, defendant filed a motion to dismiss plaintiff’s said action on the ground that the cause of action asserted therein was barred by the statute of limitations, 28 U.S.C. § 2501.
(c) By opinion rendered January 18,1961, the court denied defendant’s said motion to dismiss the petition. Knight v. United States, 152 Ct. Cl. 298 (1961).
(d) Trial of Docket No. 64-60 was held in New Orleans, Louisiana, April 9,1962.
(e) In Lipp v. United States, 157 Ct. Cl. 197, 301 F.2d 674 (1962), cert. denied, 373 U.S. 932 (1963), the court’s 'holding, in Knight v. United States, supra, that plaintiff’s claim was not barred by limitations was expressly overruled. See also *1068 Friedman v. United States, 159 Ct. Cl. 1, 310 F.2d 381 (1962), cert. denied, 373 U.S. 932 (1963).
(f) On July 26, 1963, defendant moved to dismiss plaintiff’s petition in Docket No. 64-60 as barred by limitations. By order of the court dated November 15,1963, defendant’s said motion was allowed and plaintiff’s petition was dismissed.
26. Following the September 15,1971, filing of plaintiff’s petition pursuant to H. Bes. 240, plaintiff and defendant stipulated and agreed that the exhibits and transcript of testimony in Docket No. 64-60 should be “the evidence of record and transcript of testimony in this case”, and thereupon closed proof.
27. Legislative activities on behalf of plaintiff include the following:
a. H.K. 4767, 86th Cong., and S. 3868 and S. Bes. 366,86th Cong.
b. S. 255 and S. Bes. 27,87th Cong.
c. S. 560 and S. Bes. 76,88th Cong.
d. S. 1293, 89th Cong., and H.B. 8694, 89th Cong. H.B. 8694 passed the House of Bepresentatives and was reported out of committee in the Senate.
e. S. 1757 and S. Bes. 119, 90th Cong., and H.E. 1528, 90th Cong. H.B. 1528 passed the House of Bepresentatives and was reported out of committee in the Senate.
f. H.B. 1507 and H. Bes. 107, 91st Cong. H.B. 1507 passed the House of Bepresentatives.
g. H.B. 4473, 92d Cong., referred to the Chief Commissioner of the United States Court of Claims by H. Bes. 240, 92d Cong.

 Plaintiff’s Brief to tlie Review Panel, p. 6.

 An inflammation of the middle ear.

 Plaintiff’s last VA rating prior to his World War II active service (again, apparently under the 1925 schedule) was 63 percent for chronic catarrhal otitis media, partial deafness, both ears, effective April 30, 1941.

 War Department policy at that time was “to approve for appointment or for extended active duty individuals qualified for limited assignments who have minor physical defects which would disqualify them under current physical standards but which will not interfere with the satisfactory performance of the duties contemplated,” provided the defects were stationary in character ,and were not likely to be aggravated as a result of active military service. War Department Circular 83, March 21, 1942. (Emphasis supplied.)

 The Retiring Board found his hearing to be “0/20, 0/15, 58 decibels loss” in the right ear, “0/20, 0/15, 65 decibels loss” in the left ear, and “Speech reception score: 68 decibels loss.”

 An opinion of the Surgeon General, In which the Correction Board concurred, recognized “unfavorable progress” of plaintiff’s deafness between 1942 and 1947, but reflected the belief that the degree of such progress was “consistent with natural progress of the condition”. The Surgeon General’s opinion also saw no “added increase of 30% or more over and above the degree of impairment” existing in 1942-

 The court did submit reports in cases where substantial proceedings had occurred prior to Glidden v. Zdanolc. See, e.g., Stone v. United States, 160 Ct. Cl. 128 (1963).

 At oral argument, plaintiff’s attorney of record specifically waived any claim of right, under Section 411(A), Career Compensation Act of 1949, 63 Stat. 802, 823-24, to retirement pay under the provisions of the 1949 Act, as amended.

 Cf. Brief History of Legislation Pertaining to Veterans’ Benefits, 38 U.S.C.A., pp. 4 — 5, 16-25.

 War Department policy ¡at the time was “to approve for appointment or for extended active duty individuals qualified for limited assignments who have minor physical defects which would disqualify them under current physical standards but which will not interfere with the satisfactory performance of the duties contemplated,” provided the defects were stationary in character and were not likely to be aggravated as a result of active military service. War Department Circular 83, March 21, 1942.