**JAMSAR, INC.**

v.

**The UNITED STATES.**

No. 205–68.

United States Court of Claims.
May 14, 1971.

Maurice A. Guervitz, Washington, D. C., attorney of record, for plaintiff.

Russell W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

LARAMORE, Judge.

This is a Wunderlich Act [1] review case that comes before the court on cross-motions for summary judgment. As one would expect from the notation of the Wunderlich Act this is a government contract case and it involves a sum of approximately $18,500, plus interest. It comes to us following a full hearing by the General Services Contract Board of Appeals (GSBCA) and, therefore, we are first concerned with the scope of our review. Consequently, the opinion will initially discuss the applicability of the Wunderlich principles (and the cases decided pursuant thereto). This will follow a thorough presentation of the facts and will precede the discussion of plaintiff's claims. In conclusion we shall find that the defendant is clearly entitled to have its motion granted and the plaintiff's petition will be dismissed.

The pertinent facts are actually quite simple; it is the interjection of the human element that makes things complicated. It all began when the defendant, through the General Services Administration, invited several small business concerns to submit bids for the painting of Federal Building No. 1, Third & C Streets, SW., Washington, D.C. These bids were to contain estimates for painting the exterior as well as the interior of the second and third stories. However, the dispute to be discussed herein arises only as to the interior painting and, therefore, no further references will be made to exterior painting.

Along with the invitation to bid, the defendant furnished specifications for the work to be done. Included was an "Estimated Cost Range" which provided for a cost limit of "less than $25,000." Pursuant to these specifications and costs limitation, the plaintiff submitted its bid of $15,400 and on May 31, 1967 plaintiff was awarded the contract.

Subsequent to awarding the contract and during a preconstruction conference on June 14, 1967, a dispute arose between the parties to the contract. This dispute, which forms the basis for the present action, centered around just how much of the second and third stories plaintiff was to paint. It appears that the building in question was designed so that it consisted of corridors and wings. At the end of the wings are located office space in which can be found the ordinary office furniture, bookcases, etc. Also found in these wings are filing cabinets which are used by the occupants of Building No. 1 in their normal course of business activity. The corridors do not contain any furniture, nor are they used as work spaces, but they do have benches located therein. Moreover, restrooms can be found adjoining the corridors as well as two cleaning closets. These facts, insignificant as they may appear, form the background for the dispute that first arose on June 14, 1967.

---

1. 68 Stat. 81, 41 U.S.C. §§ 321 and 322 (1964).

Plaintiff contended at the conference, and continues to contend, that the specifications required the contractor to paint only the corridors and the adjoining restrooms. Defendant differed with this contention at the initial confrontation and has continuously advocated the proposition that the specifications clearly and concisely notify the contractor that the area to be painted includes not only the corridors but the work spaces and rooms found within the building. This was the position of the contracting officer and it was supported by the GSBCA (Appeal of Jamsar, Inc., GSBCA-2417). It is now our task to decide whether the GSBCA reached a conclusion which is not arbitrary, capricious, fraudulent or "so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence" (41 U.S.C. § 321); or, conversely, we must decide whether this is the type of case that involves simply a question of law. If we are concerned with the latter in that case the decision of the Board would not be binding on this court and we must then pass on the merits of plaintiff's claim. Beacon Construction Company of Massachusetts v. United States, 314 F.2d 501, 161 Ct.Cl. 1 (1965); Gorn Corp. v. United States, 424 F.2d 588, 191 Ct.Cl. 560 (1970). To decide the above-noted question requires an understanding of the contentions made by plaintiff.

First and foremost plaintiff contends that the specifications as to the work to be performed were ambiguous. And that since they were ambiguous, the burden of that ambiguity should fall on the party who drew the specifications. Therefore, plaintiff alleges it should recover the additional $18,500 of expenses incurred in painting an area greater than was contemplated in the original bid.

Secondly, and as an alternative assertion, plaintiff asks for reformation of the contract due to a mistake in the bid. As for the merits of this claim, a thorough discussion will follow; however, at this point the mistake allegation, along with the ambiguity contention, is mentioned only in reference to the scope of our review.

■ As for the decision of the Board concerning the first claim of plaintiff, it is unquestionably a matter of interpretation of the specifications and thus a question of law. Consequently, neither this court nor the plaintiff is bound by the determination of the ASBCA[2]. Bishop Engineering Co., Inc. v. United States, 180 Ct.Cl. 411 (1967); Maxwell Dynamometer Co. v. United States, 386 F.2d 855, 181 Ct.Cl. 607 (1967); Vann v. United States, 420 F.2d 968, 190 Ct. Cl. 546 (1970). However, in reference to the alternative assertion of mistake, it is not quite as easily classified. Our problem here was aptly stated by Judge Durfee in Bromion, Incorporated v. United States, 411 F.2d 1020, 1023, 188 Ct.Cl. 31, 36 (1969), when he said "[t]he determination as to whether an issue is one of fact or of law is one of the most complex and perplexing questions facing a court."

To resolve this question, we again find the Bromion case helpful. Citing Professor Corbin, 3 Corbin on Contracts, section 614, at page 725, Judge Durfee points out that for this type of case "a court will not decree reformation unless it has convincing evidence that the parties expressed agreement and an intention to be bound in accordance with the terms that the court is asked to establish and enforce." (411 F.2d 1020, 1023, 188 Ct.Cl. 31, 36) In our opinion this quotation applied purely to the scope of review issue now at hand indicates that the reformation for mistake issue is a

2. *But see*, Morrison-Knudsen Co., Inc. v. United States, 345 F.2d 833, 170 Ct.Cl. 757 (1965) which holds that even though the decision may not be entitled to finality, the findings of fact directly related to

the legal issue are entitled to finality under the Wunderlich Act, *supra*. United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

difficult one to classify. It is filled with issues of interpretation and also requires considering questions of fact; it is truly one of those areas that makes application of the Wunderlich standards quite difficult. *See Bromion, Inc., supra.* In any event, a final decision on this partiular point is not crucial to our case. Likewise for the ambiguity issue. In both issues we feel that the plaintiff has failed to establish its right to recover and, therefore, whether we simply affirm the decision of the Board below or agree with its decision and base it on substantially the same reasoning makes little difference in the ultimate outcome. The foregoing discussion is inserted only to point out the difficulties involved in reviewing a public contract case under the Wunderlich Act and the hazards inherent in trying to classify an issue as one of fact or law. In this case the classification is not essential and thus we proceed with a discussion of the details.

Returning then to the primary contention of the plaintiff, it is essential to an understanding of the ambiguity issue that the specifications which caused the problem be considered. The specification to which plaintiff first directs our attention was contained in paragraph 4–02 entitled "Schedule of Work". Sections (a) (1) and (2) of that paragraph contained the following directives:

(a) Locations: Repair, clean and paint the surface of materials and items specified herein in the following spaces and areas:

  1. Second Story: All workspaces or rooms and public areas such as corridors and restrooms.

  2. Third Story: All workspaces or rooms and public areas such as corridors and restrooms.

This referred to the areas on the second and third stories which were to be painted. Plaintiff read the description as requiring the prospective contractor to paint only the *corridors and restrooms* while defendant contends that the description requires all workspaces or rooms and (*i. e.*, in addition to) the corridors and restrooms to be painted. Therein, plaintiff claims, lies the ambiguity.

Plaintiff arrived at its rather narrow construction of the specifications partly because of a recollection of previous experience. In 1965 the defendant invited plaintiff, together with other contractors, to bid on painting another portion of the building in question here. Along with that invitation defendant included a sketch of the building and stated in the specifications that the *entire area* of the fifth and sixth floors was to be painted. Therefore, plaintiff reasoned, if the defendant said "entire area" in the 1965 specifications, but did not use the exact words in the 1967 invitation, the defendant must mean something less than the entire area. Hence the interpretation placed upon the specification referred to above.

In addition, plaintiff explains that the specifications specifically set forth the type of paint to be used in the corridors and restrooms, while nothing as specific was included as to the workspaces or rooms. Moreover, plaintiff contends that the cost limitation of $25,000 intimated that the entire area of the second and third stories need not be painted. This again was based on the prior experience with the 1965 invitation to bid since the cost limitation in that bid was $40,000. All of the foregoing factors contributed to plaintiff's interpretation of the invitation specifications which were eventually included in the contract.

The defendant, on the other hand, contends that the specifications are clear and unambiguous. Moreover, defendant says that plaintiff's interpretation is wholly inconsistent with the other pertinent paragraphs of the specifications; to wit:

2–05 Base Bid

One lump sum bid is required. Bids shall be based on the following additional requirements:

\*     \*     \*     \*     \*     \*

b. Furniture and equipment shall be moved, covered and protected by the Contractor for the performance of the work. At the completion of each work period or night's work, the furniture and equipment shall be returned to their original location and position by the Contractor prior to the start of the day's work by Government personnel.

c. The moving and replacement of furniture and equipment shall be performed without any interference to Government operations and inconvenience to personnel.

\*    \*    \*    \*    \*    \*

4–06 General

\*    \*    \*    \*    \*    \*

b. Furniture, etc.: Contractor shall move and paint behind furniture, bookcases, file cases, shelves, etc., they may be in permanent location against walls or partitions but not secured to same. Upon completion, the furniture, etc., shall be replaced in its original location.

Defendant goes on to point out that if plaintiff's position is accepted it would be meaningless surplusage to also include the aforementioned specifications as to moving and replacing furniture, bookcases, file cases, shelves, etc. since the corridors and restrooms do not contain such furniture. This, asserts defendant, is contrary to the general rule that none of the specifications are to be rejected as meaningless when it is possible to give them a meaning consistent with the specifications as a whole. Hol-Gar Mfg. Corp. v. United States, 351 F. 2d 972, 169 Ct.Cl. 384 (1965); Bishop Engineering Co., Inc., *supra*.

In conclusion, defendant points out that the plaintiff's reading of paragraph 4–02, Schedule of Work, *supra,* completely ignores the words "all work spaces or rooms" and that such an interpretation is unreasonable in· view of all the facts.

In resolving the differing views we must look closely at plaintiff's position and the law as it relates thereto. Plaintiff's case is basically that the interpretation advanced by it is a reasonable one under the circumstances. Starting with the basic assumption of a reasonable interpretation, plaintiff then relies on the line of cases holding that if the government-drawn bid invitation is reasonably construed, that is the interpretation which will be adopted. Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947). However, plaintiff fails to recognize that, even if the interpretation is conceivable, the contractor is bound by the mandate of those cases holding that he must inquire into obvious omissions or inconsistencies in the provisions.[3] Jefferson Constr. Co. v. United States, 151 Ct.Cl. 75, 89–91 (1960); Ring Constr. Corp. v. United States, 162 F.Supp. 190, 192, 142 Ct.Cl. 731, 734 (1958). Therefore, it cannot be held that the contractor's interpretation is reasonable if the ambiguity is obvious. Southern Constr. Co. v. United States, 364 F.2d 439, 176 Ct.Cl. 1339 (1966); Randolph Engineering Co. v. United States, 367 F.2d 425, 176 Ct.Cl. 872 (1966).

Consequently, to hold for the plaintiff we would first have to find the language used by the defendant to be ambiguous. Thereafter, we would have to find that plaintiff's interpretation of the specifications was within the realm of reasonableness and, finally, that plaintiff was not obliged to inquire into any apparent discrepancies. It is not hard to understand why, in view of the standards set forth herein, plaintiff has a difficult case to win.

First of all, even if we were to find that the specifications were ambiguous and that plaintiff made a reasonable interpretation thereof, we could not overlook plaintiff's failure to inquire into what we feel are obvious discrepancies and inconsistencies. We feel quite

---

3. In certain government-drawn contracts this requirement is specifically set forth;

*see, e. g.,* Beacon Constr. Co. v. United States, 314 F.2d 501, 161 Ct.Cl. 1 (1963).

strongly that in reading the specifications as a whole, plaintiff should have recognized that certain provisions were meaningless if its interpretation was adopted. For example, the requirements as to moving and replacing furniture and equipment would have no meaning whatsoever if only the corridors were to be painted. This alone, we feel, creates the type of discrepancy, omission or conflict which should alert a reasonable man of a difference in interpretation. WPC Enterprises Inc. v. United States, 323 F.2d 874, 163 Ct.Cl. 1 (1963); Beacon Constr. Co. v. United States, 314 F. 2d 501, 161 Ct.Cl. 1, 6–7, *supra*.

■ In failing to respond to this obligation and going ahead with its bid preparation, plaintiff voluntarily assumed all risks of an incorrect interpretation. Therefore, in view of the obvious inconsistency, plaintiff, having failed to consult with the defendant's proper authorities, cannot rely on the principle that ambiguities in government-drawn contracts are construed against the drafter. Southern Constr. Co. v. United States, *supra*. Furthermore, we believe that the plaintiff's interpretation is not even reasonable. The only way the plaintiff's interpretation can be considered to be within reason is if one also considers the 1965 invitation. While in certain cases it may be proper to consider other contracts (*see*, W. G. Cornell Company of Washington, D. C., Inc. v. United States, 376 F.2d 299, 179 Ct.Cl. 651 (1967)), we are of the opinion that this was not one of those instances. In any event, we cannot find for the plaintiff on the grounds that the specifications were ambiguous. We are of the opinion that the specifications now at issue were ambiguous only if read in the light of the 1965 invitation and such a reading was improper in this case. Therefore, having found that the specifications were not ambiguous plaintiff cannot demand that the contract requirements be resolved against the drafter. WPC Enterprises Inc. v. United States, 323 F.2d 874, 163 Ct.Cl. 1, *supra*.

Thus we move to the plaintiff's alternative theory.

Plaintiff argues that if we do not find the specifications to be ambiguous, we should consider the alternative claim that a mistake was made. Plaintiff asks that because of this mistake we should grant reformation of the contract wherein plaintiff could be reimbursed for its expenditures over and above the quoted price. In response to this assertion the defendant contends that the mistake made is not the type that allows for the equitable remedy of reformation sought by the plaintiff. Defendant elaborates by pointing out that the type of mistake upon which reformation may be granted must be a clear cut clerical or arithmetical error or a misreading of the specifications of such a serious and obvious nature that the defendant's contracting agents would (or should) know of the mistake. Ruggiero v. United States, 420 F.2d 709, 190 Ct.Cl. 327 (1970).

■ It is our considered opinion that the defendant must prevail on this contention also. In the *Bromion, Inc.* case, 411 F.2d 1020, 188 Ct.Cl. 31, 35, *supra*, we pointed out that the reformation is "a remedy the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed" and we cited 3 Corbin on Contracts, section 614, at page 723 (1960). We feel that the foregoing definition expresses with extreme clarity and much desired brevity the basis for granting reformation and it does not apply to aid the plaintiff in this case. Clearly there were no manifestations by the parties to show that there was an agreement other than what was reduced to writing. Thus we have no reason to believe, or to hold, that the writing was mistakenly drawn. Nor can we find that plaintiff's incorrect interpretation which precipitated its low bid should have been detected by the defendant's agents. The contracting agent could not have known from merely looking at plaintiff's bid that a mistake had been made. Plaintiff's bid was not significantly out of

proportion with the majority of the bids submitted, and there is no other way the defendant's agents could have been alerted to plaintiff's misinterpretation of the specifications. Therefore, and in the words of our *Ruggiero* opinion (420 F. 2d 709, 715, 190 Ct.Cl. 327, 338, *supra*), we find that "an agreement cannot be revised to reflect a plaintiff's subjective understanding the defendant does not and should not know of." Benjamin v, United States, 348 F.2d 502, 172 Ct.Cl. 118 (1965).

Having earlier found that the plaintiff cannot prevail on the ambiguity issue, we must conclude that there is no basis upon which plaintiff's claim can be supported. We, therefore, find for the defendant and grant its motion for summary judgment. In so doing, we deny plaintiff's motion and dismiss its petition.