OPINION*
Schwartz, Trial Judge (Commissioner) :
By S. Bes. 132 of the 92nd Congress, the United States Senate on September 26, 1972, referred S. 2026, a bill for the relief of Eriez Magnetics Corporation, to the Chief Commissioner of this court for report, pursuant to 28 U.S.C. §§ 1492 and 2509 (1970), giving such findings of fact and conclusions of law as should inform the Congress whether the demand is a meritorious claim, legal or equitable, against the United States or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant. The Chief Commissioner referred the case to Trial Judge (Commissioner) David Schwartz for proceedings and report in accordance with the applicable rules and designated a three-member review panel to consider the report.
Claimant, a Pennsylvania corporation located in Erie, Pennsylvania (herein “the plaintiff”), seeks relief on account of losses incurred in 1968 in the performance of a contract to manufacture mail belt conveyors for the United States Post Office Department. Preparation of the bid and performance of the contract took place at plaintiff’s Trowbridge Conveyor Division in Clifton, New Jersey, whose facilities consisted of the assets of a company acquired by plaintiff some years earlier. Following the conclusion of the instant contract, the division was closed, in 1969; the losses under the instant con *676 tract, and the poor performance of the Division’s personnel in >mairing and supervising the bid which caused the losses, were in large part the cause of the closing.
The losses were caused by plaintiff’s errors in arriving at a bid in an amount far less than what turned out to be actual costs. The Post Office Department is alleged to have known or had reason to know of plaintiff’s errors, to have failed fully to advise the plaintiff and to have taken advantage of the plaintiff by accepting and retaining conveyors at less than a fair price.
The contract was a fixed price contract for portable aluminum belt conveyors for use in processing mail on the loading docks of local post offices. Three different models, L-12, L-16, L-20, were specified, the difference consisting of the length of the conveyor belt.
The solicitation for bids, issued on November 27,1967, was in two parts. Item I called for the manufacture of 173 conveyors and their delivery to designated post offices. Item II was a requirements contract for the conveyors which would be needed by the Post Office Department, estimated at 150, between the date of the award and June 30, 1969. Plaintiff bid a uniform price, $685 including freight, for each of the units under Item I, regardless of model. Under Item II, plaintiff bid $570, excluding freight, for model L-12, $630 for L-16 and $700 for L-20.
In estimating its bid, plaintiff omitted, for reasons to be discussed, a number of items, substantial and minor. Items omitted included a motor starter and related parts (though the push button for the starter was included), engineering, labor for the motor starter assembly, and overhead and markup for these and other parts. Other costs were substantially underestimated and such costs 'as special crating and manuals were omitted.
Plaintiff submitted its bid on January 3,1968. The 13 bids received were opened on January 5,1968, revealing plaintiff to be the low bidder. Its total bid of $214,105 for the 323 conveyors ordered by Item I and estimated in Item II was $61,073 lower than the next low bid of $275,178. Four of the remaining 11 bids ranged between $285,000 and $305,000; six between $325,000 and $500,000; and the highest was $895,000.
*677 January 10, 1968, the Post Office sent plaintiff a telegram requesting plaintiff to confirm all unit prices as the “variance between your bid and others reed suggests possibility of error.” It was the practice of the Post Office Department to send such a telegram in cases where the variance between the two lowest bids was 15 percent or more. In this case the variance was 22 percent.
Without any restudy of its bid estimate, and on a mere recheck of the arithmetic in the estimate, plaintiff sent prompt confirmation by telegram, followed by a confirming letter dated January 12, 1968. The contract was awarded to plaintiff on February 21,1968.
Plaintiff successfully performed the contract, furnishing 614 units — the 173 specified under Item I of the contract and 441, 291 more than the contract estimate of 150, under Item II. The total price was $405,495.
In July 1968, after manufacturing the first 20 conveyors, plaintiff made a routine cost analysis and concluded that its cost of producing these first conveyors was substantially in excess of its bid and that the cause was the omission of a number of items from its bid estimate worksheets.
After telephone calls by plaintiff’s representatives to the Post Office Department in August 1968, and a preliminary letter of September 6, 1968, a formal written request for relief was presented on October 9, 1968, extensively discussed and reviewed in the Post Office Department and finally denied on the merits on December 3, 1968. Plaintiff was, however, permitted to terminate the contract at the optimum point in the light of the orders for conveyors in process of manufacture. This point was at the production of 614 units; accordingly orders placed after November 21 were not filled. Of the 614 units, orders for 459 were placed before plaintiff first notified the Post Office Department of its likely losses and bidding errors and 486 were placed before the Post Office Department received plaintiff’s written request for relief on September 9,1968.
The claimed losses of $131,157 consist of the difference, by reason of alleged errors, between the actual bid and the now “corrected” bid or price for the 614 units. The accompanying-findings of fact contain a detailed analysis of the errors, the *678 differences and the other relevant facts in such detail as the record permits.
Plaintiff urges three theories as warranting relief: (1) reformation to increase the contract price on the ground that the Post Office Department knew or had reason to know of the bidding errors; (2) unjust enrichment of the Government; and (3) broad equitaible principles.
It is found that the bid was improvidently low. not by reason of an inadvertent mistake such as anyone might commit, but rather by reason of the general inefficiency, negligence and consequent errors of plaintiff’s supervisory and junior personnel involved in the bidding process; that had plaintiff not been negligent and inefficient it would have increased its bid per unit by $144.39 plus $14.44 for additional profit and nevertheless not lost its position as low bidder; that were plaintiff to show merit to the claim made in this proceeding it should recover its excess costs per unit on the 614 units (but not lost profit) of $144.39 per unit, or $88,655.46, plus the $5550 by which freight was underestimated, or $94,205.46; that the Post Office Department had no knowledge of the errors in plaintiff’s bid and that the Department acquitted itself of its duties to plaintiff in respect of errors and doubts as to the bid by notifying plaintiff as it did and asking for confirmation of the bid; and that plaintiff was again inefficient and negligent in confirming its bid without consulting the abstract of bids or restudying its bidding worksheets. For the following reasons it is concluded that the plaintiff’s losses were due to its own inefficiency and negligence, without fault or unconscionable conduct by the United States and not under circumstances creating a legal claim against the United States. The claim has, moreover, no merit under equitable principles, whether principles of morality or those applied in a court of equity. Any payment to plaintiff would be a gratuity, would erode the responsibility placed, in the Government’s procurement system, upon the bidder in a fixed price contract for the accuracy of his bid, and would encourage unwarranted claims by bidders who had suffered losses for reasons not the fault of the Government.
*679 I
A contractor will be entitled to reformation, to increase the contract price, where he shows a material mistake consisting of an error in his bid, of which the Government at the time the bid was accepted knew or had reason to know. Wender Presses, Inc. v. United States, 170 Ct. Cl. 483, 485, 343 F. 2d 961, 962 (1965) ; Allied Contractors, Inc. v. United States, 159 Ct. Cl. 548, 549-50, 310 F. 2d 945, 945-46 (1962). If, however, the Government, having reason to surmise an error, advises the contractor of the reason for its belief and requests verification, and the contractor confirms his bid, the contractor is deemed to be at fault, bears the risk of error and is bound by his confirmation. Chernick v. United States, 178 Ct. Cl. 498, 505, 372 F. 2d 492, 496 (1967); Alabama Shirt & Trouser Co. v. United States, 121 Ct. Cl. 313, 331 (1952). See ALI, Restatement op Contracts Second, Tentative Drapt No. 10 (1975), §§ 295(b), 296 (b), (c), 229, comment (a), illus. 2; Dohe, Mistakes in Government Contracts, 18 S.W.L.J. 1,32-38 (1964).
The errors here consisted of omissions of required materials and understatements of required hours of labor and overhead costs, in plaintiff’s private working estimates of its costs and what should be its bid price for the three models of conveyors specified in the bid package. Major items were omitted by reason of the inexperience of the salesman assigned to do the estimate and the negligence of his more experienced and supposedly mature supervisors, responsible for reviewing and checking his estimates. The underbidding was in part influenced by the fact that plaintiff was anxious to get the business, and the competitive urge may have been part or all of the cause for the omission of lesser items such as paint, crating and technical manuals.
The Post Office Department did not have a -copy of plaintiff’s list of materials; it did not know how plaintiff calculated its bid. Cf. Loral Corp. v. United States, 193 Ct. Cl. 473, 480, 434 F. 2d 1328, 1331 (1970). The Department did not and could not know, from the plaintiff’s bid, that plaintiff’s estimator had omitted materials plainly specified in text and in drawings. Cf. Jamsar, Inc. v. United States, 194 Ct. Cl. 819, 829, 442 F. 2d 930, 935-36 (1971).
*680 The Post Office knew only the dollar variance between plaintiff’s bid and the other bids, and that plaintiff’s bid was lower than the Post Office’s estimate of cost. Six of the 12 bids other than plaintiff’s were also below the Government’s estimate. The hard fact, therefore, was the fact that plaintiff’s bid of $214,105 was $61,073 or 22 percent lower than the next higher bid. The Department’s practice in the case of a bid 15 percent or more lower than the next higher bid was to point out the possibility of error, and the reason, and ask for confirmation, as it did here.
In the circumstances, the telegram said all the Post Office Department could say, by pointing out that “variance between your bid and others reed suggests possibility of error.” The telegram did not deceive or mislead the plaintiff. Prudent men would have inquired as to how great was the variance— information publicly available from the abstract of bids— and restudied the bid estimate. Cf. Jamsar, Inc. v. United States, supra, 194 Ct. Cl. at 827, 442 F. 2d at 934-35; Hunt & Willett, Inc. v. United States, 168 Ct. Cl. 256, 265, 351 F. 2d 980, 985-86 (1964). Plaintiff’s employees, without any thought other than that their bid was lowest and the award was in sight, did nothing, on receipt of the telegram, but recheck the bid for arithmetical error and, finding none, promptly wired confirmation. The negligence in the original estimate of the bid was repeated. “Since plaintiff was satisfied with its bid, after checking it, it can hardly be said that it was apparent to the defendant’s representatives that plaintiff had made an error.” Allied Contractors, Inc. v. United States, supra, 159 Ct. Cl. at 551, 310 F. 2d at 946.
Though plaintiff had experience in Government contracting, all of the employees involved in reviewing the bid— manager, shop foreman, experienced supervisor and estimator — committed errors, in assigning an inexperienced young man to estimate the bid, in supplying him with erroneous data and estimates, in reviewing his work and, finally, in confirming the bid when they were put on notice of its possible error. The losses suffered were caused by plaintiff alone, by its repeated errors and acts of negligence. The estimator’s errors, in omitting elements of cost, and those of his seniors in reviewing his work and in giving him an estimate of labor *681 costs and other elements of the bid, were so numerous as to warrant a conclusion that plaintiff “exercised ‘no diligence whatever’ in ascertaining the readily accessible facts” relevant to the making and confirmation of his bid. Anderson Bros. Corp. v. O'Meara, 306 F. 2d 672, 677 (C.A. 5 1962). The number of mistakes was so great as to rule out any claim of “honest mistake” in arithmetic or other simple inadvertance, such as anyone might commit. Plaintiff was not so much mistaken as generally inefficient and guilty of bad judgment, qualities for whose consequences no remedy is given either at law or equity. Ruggiero v. United States, 190 Ct. Cl. 327, 335, 420 F. 2d 709, 713 (1970); Alabama Shirt & Trouser Co. v. United States, supra.
II
Nor is there any ground for a claim of unjust enrichment of the Government or unconscionable conduct by its representatives.
The contract was clear that Item II was a requirements contract by which the successful bidder would agree to furnish, at the prices bid, all conveyors needed by the Government until June 30,1969, more than 18 months distant from the solicitation. The contract estimate of the number needed before that date was clearly only an estimate. There was no showing that this estimate was unreasonable when made. The Post Office thus bargained for and received the conveyors under a fixed price contract, paying the contract price. Plaintiff did not provide any additional unbargained-for services or goods.
Plaintiff’s unilateral mistakes and its 'failure to discover its errors prior to contract award were not caused by any act or omission of the defendant. The Government took no advantage of plaintiff either during the pre-award period, as seen above, or during the negotiations for a price increase.
In considering plaintiff’s request for relief, the Post Office Department did not mislead plaintiff, gave no assurances that plaintiff would receive a price increase or be compensated for any loss, and urged plaintiff to perform the contract while it conscientiously explored the possibility of lawful relief (and found none). Plaintiff’s continued *682 performance, while its request for relief was pending, was no more than was required by the contract.
There was here no mutual mistake, no wrongful act or omission by the Government contributing to plaintiff’s mistakes. Schutt Construction Co. v. United States, 173 Ct. Cl. 836, 353 F. 2d 1018 (1965); National Presto Industries, Inc. v. United States, 167 Ct. Cl. 749, 338 F. 2d 99 (1964); Rochester Iron da Metal Co. v. United States, 168 Ct. Cl. 422, 339 F. 2d 640 (1964). And no benefit was gotten by the Government beyond what it had bargained for and plaintiff was properly obligated to supply. Palmer-Bee Co. v. United States, 142 Ct. Cl. 485, 489-90 (1958); Clavier v. United States, 139 Ct. Cl. 98, 112, 153 F. Supp. 451, 458 (1957).
The circumstances offer no ground for a decision which would shift from the contractor to the Government the losses suffered by the contractor in the performance of a competitively bid, fixed price contract, losses caused solely by the contractor’s negligence and inefficiency, expressed in multiple bidding errors and in confirming a bid which the Government had advised was suspect for error. The case presented is in reality no more than one of losses from an improvident bid. 'Such a case is as much without merit as one for losses from inefficient performance. Federal Electric Corp. v. United States, 202 Ct. Cl. 1028, 1032, 486 F. 2d 1377, 1379 (1973), cert. denied, 419 U.S. 874 (1974); Bentley v. United States, 189 Ct. Cl. 547, 552-53 (1969); Hollander v. United States, 147 Ct. Cl. 550, 562, 178 F. Supp. 932, 939 (1959).
Ill
Lastly, there is no merit to the contention that recovery may be based upon “broad equitable principles” said to be applicable to such a case as this. While the parties differ on the breadth of the standard, in a Congressional Reference case, for the approval of a claim as equitably meritorious, they both approve of Burkhardt v. United States, 113 Ct. Cl. 658, 667, 84 F. Supp. 553, 559 (1949), in which it was said that “the term ‘equitable claim’, as used in 28 U.S.C., Sec. 2509, is not used in a strict technical sense meaning a claim involving consideration of principles of right and justice *683 as administered by courts of equity, but tbe broader moral sense based upon general equitable considerations.”
Whatever tbe subtly different tests advocated, and by either standard espoused,[1] tbe facts of this case do not give rise to an “equitable” claim for compensation under moral or equitable principles, broad or otherwise. Plaintiff’s losses were caused by its own multiple acts of negligence and inefficiency.
Plaintiff had a complete and accurate bid package before it, in estimating its bid. It was negligent in assigning inexperienced or inefficient personnel to the job. On the bid opening, the abstract of all the bids became available to plaintiff. The variance between plaintiff’s and the other bids as suggesting possibility of an error in bidding was explicitly brought to plaintiff’s attention. Had plaintiff acted reasonably, it would have made inquiries of the Post Office Department as to the other bids, consulted the bid abstract and then subjected its bid estimate to the careful study it should have had in the first place. Instead, plaintiff’s representatives merely rechecked the arithmetic in the bid estimate and took no action even after the bid abstract became available to it, before the award. In these circumstances, the defendant did all that could be expected of it, and the plaintiff caused its own losses, by its multiple acts of negligence and by its inefficiency.
One final consideration is the effect on the Government’s procurement system were plaintiff’s claim to be recognized. The competitive bidding system by which fixed price contracts are awarded is understood to place full responsibility on the successful bidder for maintaining his agreed fixed bid *684 price. He knowingly assumes tbe risk that his costs will exceed his bid, in return for the promise of profit from the difference between bid and costs. The very definition of the fixed price contract provides that it is “not subject to any adjustment by reason of the cost experience of the contractor, in the performance of the contract.” ASPE 3-404.2 (a), 32 CFE § 3.404-2(a) (1974); cf. FPR 1.3-404.2 (a), 41 CFE § 1-3.404-2 (a) (1974). If the instant claim 'for losses on such a contract were recognized, it would surely encourage other bidders to rely less on the care with which they make their bids and more on the making of claims when their errors in bidding result in losses.
Equity must be done to both parties. Equity for the Government, for its system of procurement and for all the bidders who are held to their contracts points in this case only to a decision that the risk of error and loss be borne by the contractor who assumed it, as this plaintiff did when it ignored the opportunity, presented by the Government’s telegram, to discover its errors. Loral Corp. v. United States, supra, 193 Ct. Cl. at 480, 434 F. 2d at 1331; Rochester Iron & Metal Co. v. United States, supra, 168 Ct. Cl. at 426-27, 339 F. 2d at 643; ALI, Restatement ofConteacts Second, Tentative Dkapt No. 10, supra.
For the reasons stated it is concluded that plaintiff has neither a legal nor an equitable claim against the United States for the losses incurred in the performance of the contract, and, moreover, that broad equitable principles do not warrant any relief. Any payment to plaintiff would be a gratuity.
The opinion, findings of fact and conclusion will be certified by the Clerk to the Senate pursuant to its resolution of reference.
Conclusion
The Congress is advised that the plaintiff has neither a legal nor an equitable claim against the United States and that any payment to plaintiff would be a gratuity.

The opinion, findings ol fact, and conclusions are submitted under the order of reference and the Rules of the Chief Commissioner. The findings of fact are not printed here.

 Defendant urges that “the defendant’s liability must rest on some unjustified act or omission to act which caused plaintiff’s damage. * * * Put otherwise, it has been said that the test of ‘equity’ is whether the claim asserted would he recoverable against a private party.” Webb v. United States, 192 Ct. Cl. 925, 932 (1970) ; see also Burt v. United States, 199 Ct. Cl. 897, 906 (1972).
Plaintiff urges, to the contrary, that “circumstances * * * sufficient to establish plaintiff’s ‘equitable’ position under the concept set forth in the Burkhardt case, supra,” may exist though the “plaintiff’s errors were not attributable to any action of the Government” (Burnley V. United States, 169 Ct. Cl. 100, 108 (1965)) and that a plaintiff may recover if “the conscience and honor of the sovereign dictate that plaintiff[s] should receive compensation * * Ghitescu v. United States, supra, 201 Ct. Cl. 823, 828, quoting from Drake America Corp. v. United States, 168 Ct. Cl. 318, 326 (1964).