This Wunderlich Act[1] case comes before us on cross-motions for summary judgment. The sole issue is whether a contract entered into between plaintiff and the U. S. Postal Service for alterations to a post office included the installation of an air conditioning (ac) system. The Postal Service Board of Contract Appeal ( psbca or board) upheld the decision of the contracting officer that the contract required such installation. Plaintiff timely appealed to this court. For the reasons stated below, we affirm the decision of the board.
On September 9, 1975, defendant issued Invitation for Bid (Construction Contract) (hereafer ifb), No. 249955-76-A-0004 for alterations to the U.S. Post Office in Franklin, New Hampshire.[2] On the front page of the ifb was the following description: "The work includes demolition of a loading platform, construction of a new loading platform, new electrical lighting and related electrical work, lobby and screenline renovations and installation of an air conditioning system.” Estimated cost of the project was between $25,000 and $100,000. The ifb contained the statement that any request for explanations of the ifb, drawings, specifications, etc., must be submitted in writing. Bidders with technical questions relating to plans or specifications were directed to contact two individuals, one *723 of whom was followed by the designation "(Air Conditioning Work only).” Apparently defendant’s architect-engineer designed all of the project except for the AC system, whose drawings and specifications were supplied by an outside engineering firm.
Plaintiff, a Massachusetts corporation, was not originally sent the ifb. After procuring the ifb on its own, plaintiff, on September 15, 1975, requested a set of plans and specifications for the project. The specifications sent to plaintiff on September 17, 1975 consisted of two parts, both numbered "ifb No. 249955-76-A-0001.” One part of these technical provisions dealt with components which in the aggregate constituted an ac system, while the other part dealt with the general construction aspects of the alterations to the building. Plaintiff was also sent 12 drawings to which a bidder’s work was to conform: 7 drawings related to construction work, 2 to electrical work, and 3 drawings for the ac system. The designer of the AC drawings apparently considered the work shown to be the subject of a separate contract for ac work only.[3] This premise is evidenced by two facts: (1) on the drawings were the notations "n.i.c.” (not in contract) at the point where the ac system connected to the existing electrical system; and (2) the statement in the drawings that the ac contractor would have to coordinate his work with that of the general construction contractor.
Before the close of the date for bids, three bid amendments were issued, and the original closing date of October 9, 1975, was ultimately extended to October 30, 1975. After receipt of the drawings (on or around September 17, 1975), plaintiff began to prepare its bid. On October 26, 1975, or October 28,1975, plaintiffs president telephoned the designated contract specialist to inquire about certain matters relating to the contract, one of which was "the extent of the coordination on the air conditioning.” Plaintiffs president was transferred to a member of the technical staff, who advised him that he believed that the ac work would be part of the plaintiffs contractual duties. Plaintiffs president then asked if he "could rely on this belief as binding” *724 and was told it was up to him to interpret the contract and referred him to the ifb section regarding explanations to bidders.[4] After this conversation, plaintiff’s president examined the specifications and drawings and apparently concluded that the installation of the ac system was not required (for reasons discussed later). He later tried to reach the ac system’s designer, but failed to contact him. Plaintiffs president made no further attempts (before submitting the bid) to get an interpretation of the contract and never contacted the contracting officer, although it is conceded he could have done so.
Plaintiff submitted a bid of $82,764, presumably based upon its conviction that the installation of the ac system was not part of the work mandated by the contract. Plaintiff was low bidder by $1,111 and was awarded the contract, No. 249955-76-V-0088-00, on November 7, 1975. The contract, by its terms, incorporated the specifications (and amendments thereto) and drawings contained in ifb No. 249955-76-A-0004. Work was to be completed by late spring 1976.
Even before work on the project began, a dispute broke out on whether plaintiff was required to install an ac system providing cool air as well as heat. Pursuant to the disputes clause of the contract, plaintiff sought the contracting officer’s opinion on whether the contract required plaintiff to install an ac system. On February 10, 1976, the contracting officer issued a final decision informing plaintiff that the ac work was required by the contract. Plaintiff timely appealed this decision to the psbca. On June 20, 1977, the psbca issued its decision denying plaintiffs appeal of the contracting officer’s decision. On January 15, 1981, plaintiff filed its petition in this court.
Plaintiffs basic argument is that at the time of the signing of the construction contract, it was never intended that plaintiff was responsible for installation of the ac equipment. Rather, defendant tried to "inject” this requirement by "insinuating” it into the contract after the bid award. Defendant, plaintiff contends, originally intended the ac work be the subject of a wholly separate contract. *725 Evidence of this intent is seen through the disparity in the numbering of the technical provisions (numbered, in pertinent part, "0001” instead of "0004,” the number of the ifb) and the notations "n.i.c.” and statement of coordination with the "other” contractor contained in the ac drawings. As a consequence, plaintiff believed that the ac technical specifications and drawings included in the bid package were only there so that the general construction contractor could coordinate its work with the separate ac contract. Plaintiff therefore states that the psbca’s decision to the contrary is arbitrary, capricious and lacking in substantial evidence, and seeks damages of $60,000.
As an initial matter, defendant argues that we should dismiss the petition because plaintiff has failed to comply with the Rules of this court. Specifically, defendant states that plaintiff has failed to comply with Rule 163(b)(3), applicable to Wunderlich Act reviews, by omitting citations to the board’s decision and references to the administrative record in its brief in support of summary judgment. Defendant cites Jet Constr. Co. v. United States, 209 Ct. Cl. 200, 204, 531 F.2d 538, 540 (1976), in which this court stated:
In a Wunderlich Act review case the * * * plaintiff has the burden to specify the facts and circumstances contained in the Board’s record which make the Board’s decision lacking in substantial evidence.” [Citations omitted.] Plaintiff, in this case, has done little more than place the Board record before the court, and challenged the court to find error in the record rather than properly taking up the challenge itself of establishing factual or legal error in the Board’s decision. * * * It is not the court’s function to supply this deficiency by an independent excursion along the administrative trail. * * Sundstrand Turbo v. United States, 182 Ct. Cl. 31, 60, 389 F.2d 406, 423 (1968).
In this case, plaintiff does allege specific factual and legal errors in the psbca’s decision, often without providing citations to either the decision or the administrative record. Fortunately for plaintiff, the decision and record are such that location of plaintiffs references is not unduly burdensome. In the present circumstances, consideration of plain *726 tiffs substantive claims is preferable to dismissal due to a procedural defect.
It is well established that this court’s standard of review in a Wunderlich Act case is limited to whether the board’s decision is fraudulent, capricious, arbitrary, so erroneous as to imply bad faith, or not supported by substantial evidence. United States v. Carlo Bianchi & Co., 373 U.S. 709, 714 (1963); Koppers Co. v. United States, 186 Ct. Cl. 142, 147, 405 F.2d 554, 557 (1968). We have held that interpretation of contract specifications is a question of law, Maxwell Dynamometer Co. v. United States, 181 Ct. Cl. 607, 626, 386 F.2d 855, 867 (1967), and that a board’s determination of a question of law is not binding on this court. Arundel Corp. v. United States, 207 Ct. Cl. 84, 97, 515 F.2d 1116, 1123 (1975). However, a board’s finding is given a presumption of validity. As stated in Koppers, "Where two equally reasonable but contrary inferences might be drawn from the record, and each could be sustained as supported by substantial evidence, the one adopted by the Board shall be sustained.” 186 Ct. Cl. at 149, 405 F.2d at 558.
Rather than deal with each of plaintiffs objections individually, an examination of the totality of circumstances relating to the contract would be helpful in deciding whether the psbca’s decision should be affirmed. As both parties realize, in determining whether the contract required the installation of an ac system, the contract must be read as a whole. Hol-Gar Corp. v. United States, 169 Ct. Cl. 384, 395, 351 F.2d 972, 979 (1965). The psbca cited the following factors as supporting the premise that the contract required the ac work: (1) the work description in the ifb plainly stated that the installation of an ac system was required; (2) the IFB listed a certain individual to respond to inquiries on ac work only; (3) the ifb not only listed the AC drawings as applicable, but included technical specifications for both ac and construction work; and (4) one of the amendments to the IFB included a change in the ac specifications, strongly indicating that such change was important to bidders in that it affected the scope of the work on which they were to bid. The board concluded that the ifb, when ripened into a contract, clearly required the installation of an ac system.
*727 Plaintiff asserts that the following evidence supports its position that the ac work was the subject of a separate contract: (1) the specifications included with the bid package bore the number "0001,” while the ifb was numbered "0004,” demonstrating that the ac specifications were for coordination purposes, only;[5] (2) the inclusion of two sets of drawings, two title pages and two sets of specifications show that defendant intended the ac work to be the subject of a separate contract; (3) the notations "n.i.c.” and statement of coordination with a separate contract on the ac drawings prove they were included for coordination purposes only; and (4) inclusion of separate specifications and drawings for coordination purposes is consistent with architectural standards of professional practice.
Plaintiff argues that the psbca’s determination that the specifications included in the bid package consisted of two parts, both labeled "0001,” is "without any factual basis.” Inspection of the record reveals the board’s description to be accurate. The psbca found that if the specifications dealing with the ac system were read out of the contract because of the numbering discrepancy, then the general construction specifications would also have to be disregarded. As a consequence, all specifications would have to read out of the contract. The board therefore concluded that this relatively minor discrepancy could not be used to produce so drastic a result.
The psbca found that the notations "n.i.c.” and statement of coordination in the ac drawings were of no great consequence. The board concluded that when plaintiff received both sets of specifications, plaintiff should have realized that it would be the "other” contractor referred to in the ac drawings.
Upon consideration of the contract as a whole, we cannot say that the psbca’s finding that installation of an ac system was required is not supported by substantial evidence. It would appear that the Postal Service did not do a perfect job of integrating the ac specifications and drawings with the general construction provisions in constructing the bid package. The separate packaging of the ac materials *728 undoubtedly resulted from the fact that they were designed by a different firm than the one which designed the rest of the project. Nevertheless, viewed as a whole the evidence supporting the board’s determination is persuasive. Against the plain statements (in the ifb) that ac installation was part of the work to be performed and that the work shall conform to (among other things) the ac drawings, plaintiffs reliance on minor inconsistencies is unconvincing. All other arguments raised by plaintiff, although not directly mentioned in this order, have been considered and found to be without merit.
Finally, even if we found that plaintiffs interpretation of the contract was reasonable, plaintiff would have had a duty to inquire before the signing of the contract. If it is assumed that the ac specifications and drawings were included only for the purpose of coordination, an obvious inconsistency with the statement of work and statement of conformity to the drawings would arise. In such a situation, this court has held that a contractor has a duty to inquire if it plans later to rely on its interpretation of the contract. Jamsar, Inc. v. United States, 194 Ct. Cl. 819, 827, 442 F.2d 930, 934 (1971); Beacon Constr. Co. v. United States, 161 Ct. Cl. 1, 6, 314 F.2d 501, 504 (1963). Here the ifb specifically stated that any explanations concerning the project were to be submitted in writing. When plaintiff did (orally) inquire, it chose to ignore the advice of the technical staff member and rely on its own interpretation as presumptively correct. We agree with the conclusion of the board that plaintiff "acted at its own peril and, having made the wrong choice, cannot be upheld.” psbca No. 252 at 14.
In summary, we find plaintiffs interpretation that the contract did not require installation of an ac system to be unreasonable in light of substantial evidence to the contrary. In any event, plaintiffs failure to follow the procedures for explanations set out in the ifb when confronted with a patent inconsistency (if plaintiffs interpretation were accepted) precludes its recovery. We therefore find that the psbca’s determination was not arbitrary, capricious or unsupported by substantial evidence.
it is therefore ordered, upon consideration of the parties’ submissions, without oral argument, that the *729 decision by the psbca is affirmed. Plaintiffs motion for summary judgment is denied, and defendant’s cross-motion for summary judgment is granted. Plaintiffs petition is dismissed.

 41 U.S.C. §§ 321,322 (1976).

 A more detailed statement of facts is contained in psbca No. 252 (June 20,1977).

 psbca No. 252 at 5.

 As mentioned, the ifb stated that all such requests for explanations must be submitted in writing.

 These four digits apparently represent the project number, and would therefore be used to differentiate one solicitation from another.