**Gene HOWARD, Trustee in Bankruptcy for the Estate of Arcadia Manufacturing, Inc.**

v.

**The UNITED STATES.**

**No. 393–75.**

United States Claims Court.

April 25, 1983.

As Corrected May 9, 1983.

---

**394**

Gerson B. Kramer, Washington, D.C., for plaintiff; Douglas L. Patin and Braude, Margulies, Sacks & Rephan, Washington, D.C., of counsel.

Kathleen A. Flynn, Washington, D.C., for defendant; Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., of counsel.

## MEMORANDUM OF DECISION

WHITE, Senior Judge.

After a too-long delay, involving an attempt in 1976, a subsequent attempt in 1976–77, and a third attempt in 1980 to dispose of the case by means of dispositive motions, a formal suspension of court proceedings to await action by the Armed Services Board of Contract Appeals on a claim for administrative relief, an informal suspension of court proceedings while the parties conducted lengthy negotiations in an unsuccessful attempt to agree on a stipulation of facts, the bankruptcy of the original plaintiff, Arcadia Manufacturing, Inc. (Arcadia), and other elements of delay, this case is finally the subject of a court decision on the merits.

The 1980 attempt to dispose of the case without trial consisted of cross-motions for summary judgment filed by the plaintiff and the defendant. At that time, the case was pending in the former United States Court of Claims. That court, on October 3, 1980, denied the cross-motions for summary judgment, and, in the same order, stated that "the cause is referred to the trial division for further proceedings pursuant to the provisions of Rules 166 and 54." Court of Claims Rules 166 and 54 dealt with the handling of dispositive motions by the trial division of the court, and the cross-motions for summary judgment were no longer pending.

The Court of Claims passed out of existence at the close of September 30, 1982, and this case was transferred to the docket of the United States Claims Court. It having been concluded that the proper disposition of the case required a trial on the merits, such a trial was held in Shreveport, Louisiana; and, following post-trial briefing by the parties, oral arguments were heard by the court.

The plaintiff, who is the trustee in bankruptcy for the estate of Arcadia, bases this action fundamentally on the defendant's failure to pay an amount allegedly due under a price escalation provision which, according to the plaintiff, was included in Contract No. DAAA09–74–B–0052 (the contract). The contract was awarded to Arcadia on February 8, 1974, and required Arcadia to supply 2,458,300 type PA55 fiber ammunition containers for the U.S. Army Armament Command (the Armament Command) at Rock Island, Illinois, the unit price being $1.1995 per container.

The defendant asserts that the contract did not contain a price escalation clause.

The crucial question before the court, therefore, is simply whether the contract did or did not contain a price escalation clause. For the reasons stated subsequently, it is concluded that this question should be answered in the negative.

### The Mysterious "x"

The events leading up to the present litigation began on November 8, 1973, when

Solicitation No. DAAA09–74–B–0052 (the IFB) for the procurement of 2,458,300 fiber ammunition containers was issued by the Armament Command.

The IFB contained the following provision (among others) on "Page 41 of 43 Pages":

(D) The following additional contract provision(s) are made a part hereof (copy attached):

| PROV NO. | ASPR REFERENCE | TITLE | DATE |
|---|---|---|---|
| 63 (x) | 7–104.44(a) | Value Engineering Incentive | 1971 MAY |
| 64 (x) | 7–104.44(c)(i) | Value Engineering Incentive | 1971 MAY |
| 65 (x) | 7–104.44(d)(ii) | Value Engineering Incentive | 1971 MAY |
| 66 (x) | 9–107.5(b)*** | Patent Rights (License) | 1969 DEC |
| 67 (x) | AMCPI–7–181 | Demilitarization | 1963 MAR |
| __ (x) | 7–104.46 | Required Sources for Precision Components for Mechanical Time Devices | 1971 AUG |
| 68 (x) | ARCPI 1–324.5 | Warranty of Supplies | 1969 JAN |
| __ (x) | **7–107 | Price Escalation | 1971 NOV |

The next page of the IFB, "Page 42 of 43 Pages," contained an explanation of the meaning of the two asterisks appearing in the reference to ASPR 7–107, as follows:

** Applicability to contract will be stated at time of award.

Testimony presented at the trial on behalf of the plaintiff was to the effect that Arcadia, in preparing its bid, believed that the presence of the "x" in the reference to ASPR 7–107 was an assurance that this price escalation provision would be incorporated in the contract; and that the presence of precisely the same "x" in the contract itself made the ASPR 7–107 price escalation provision part of the contract.

The plaintiff's belief that the presence of the "x" necessarily made the ASPR 7–107 price escalation provision part of the contract does not appear to have been a reasonable belief.

In this connection, it should be mentioned that although Arcadia, at the time when the IFB was issued, had been in business only since January 1971, or less than 3 years, the three persons who constituted the management of Arcadia—Joseph Parks, president, and his two sons, Richard Parks, vice-president, and Terry Parks, secretary-treasurer—were all men of experience in the business of manufacturing ammunition containers for the Government under contracts and subcontracts. Joseph Parks had been engaged in the business since the middle 1930's; Richard Parks had been working in the business for about 8 years; and Terry Parks had been working in the business for approximately 5 years.

It should be noted that although an "x" was typed in the reference to ASPR 7–107 (there is no clear explanation in the record as to who inserted the "x", or how it came to be inserted), there was no contract provision number indicated for this provision; and that, although the introductory clause (D) to this part of the IFB, and of the contract, stated that copies of the ASPR provisions that were to be incorporated by reference in the contract were attached, no copy of the ASPR 7–107 price escalation provision was attached to the IFB or to the contract. In addition, the two asterisks appearing in the reference to ASPR 7–107 meant that "Applicability to contract will be stated at time of award"; and nothing was said at the time of the award of the contract about ASPR 7–107 being applicable to the contract.

The testimony of Richard Parks and of Terry Parks (Joseph Parks did not testify at the trial because of poor health) made it plain that Arcadia's management did not know, either when preparing Arcadia's bid or when entering into the contract, what ASPR 7–107 provided, but thought it had to do with "10 percent for labor and 10 percent for materials." In view of this uncertainty on the part of Arcadia's management, who were experienced businessmen, as to just what the presence of the "x" in relation to ASPR 7–107 really signified, and the absence of a copy of the regulation from the IFB and contract "package," it

was certainly incumbent upon the management, if they expected to bind themselves and the Government to the ASPR 7–107 price escalation provision, to obtain a copy of ASPR 7–107 from the Armament Command, or some other source, and inform themselves as to what it actually provided. *Cf. Jamsar, Inc. v. United States,* 194 Ct.Cl. 819, 826–27, 442 F.2d 930, 934–35 (1971); *Highway Products, Inc. v. United States,* 208 Ct.Cl. 926, 941–42, 530 F.2d 911, 919–20 (1976). They did not do this. If they had, it would have been obvious to them that the ASPR 7–107 price escalation provision itself, without being supplemented, was meaningless.

It is of major significance, insofar as this case is concerned, that the language of the ASPR 7–107 price escalation provision stated in pertinent part as follows:

(a) If at any time during the performance of this contract there is an increase or decrease in the rates of pay for labor * * * or unit prices for materials *set forth in the Schedule,* the Contractor shall notify the Contracting Officer thereof within sixty (60) days of such increase or decrease * * *.

(b) Promptly upon receipt of any notice * * * described in (a) above, the Contractor and the Contracting Officer shall negotiate a price adjustment, and the effective date thereof, in the contract unit prices. Such adjustments will be limited to the amount of increase or decrease in the labor rates * * * or unit price of materials, *as identified in the Schedule* * * *.

(c) Notwithstanding any other provision of this clause, any price adjustments under this clause shall be subject to the following limitations:

(i) There shall be no adjustment for supplies or services whose production cost is not affected by a change in the rates of pay for labor * * * or unit prices for materials *set forth in the Schedule.*

(ii) There shall be no adjustment other than for increases or decreases in the rates of pay for labor * * * or unit prices of materials *set forth in the Schedule.* [Emphasis supplied.]

It is plain from the language of ASPR 7–107 that its price escalation provision could not be utilized unless there was incorporated in the contract a supplementary schedule of rates of pay for labor, or of unit prices for materials, or both, that would constitute a base on which to determine the extent of any increase or decrease in the anticipated cost of performing the contract. The contract here did not contain any such schedule.

Under the circumstances, a holding is justified, and made, that Arcadia's experienced management could not reasonably rely on the presence of the "x" in the reference to ASPR 7–107 as establishing that the Armament Command had committed itself to a "blank check" type of price escalation provision, which was not supplemented by any sort of wage or price schedule that could be used as a base or starting point in determining the amount of the Government's obligation under the provision.

### The Conversation With Kenneth Sobkowiak

In addition to relying on the presence of the "x" in the reference to ASPR 7–107, the plaintiff also asserts that, during a conversation that took place between Joseph Parks and Kenneth Sobkowiak before Arcadia's bid was accepted, Mr. Sobkowiak assured Arcadia that the proposed contract provided for price escalation.

Kenneth Sobkowiak was the Contract Specialist in the Armament Command who prepared the IFB and, subsequently, prepared the document which awarded the contract to Arcadia.

The plaintiff's principal evidence pertaining to this incident is summarized in the following numbered paragraphs:

(1) When the IFB was issued, price and wage controls were in effect, and prices and wages were rather stable. Arcadia was apprehensive, however, that controls might be lifted during the performance of the contract and rapid rises in wages and prices might result.

(2) There was a substantial delay between the date of the bid opening (December 10, 1973) and the date of the award of the contract to Arcadia (February 8, 1974). Arcadia became concerned over the delay, as prices were rising and Arcadia was worried about this.

(3) On December 20, 1973, Centron Corporation, which had submitted the low bid of $1.0784 on 1,250,000 units pursuant to the IFB, sent the following telegraphic message to the Armament Command:

We hereby withdraw our offer on subject solicitation due to circumstances beyond our control. Our raw material prices have been increased this date to such an extent that it is impossible for us to perform on this offer.

(4) After Centron Corporation's message of December 20, 1973, was received, the Armament Command, in a telephone call, asked Arcadia if it would supply the entire contract quantity; and Arcadia gave an affirmative response. Thereupon, personnel of the Armament Command conducted a pre-award survey of Arcadia and its facilities. On the basis of that survey, the survey personnel made the following recommendation in a telegram dated January 4, 1974:

Re telecon query concerning production capability of Arcadia Mfg. Co. on IFB DAAA09–74–B–0052. It is the opinion of this office that Arcadia does possess necessary production capability and could fabricate the entire lot as specified on the original IFB. This would be done by going to a 2-shift operation as labor is no problem in that area. At this point, material supply appears firm and only escalating prices cloud the future. Full award is recommended.

(5) Both Terry Parks and Richard Parks testified, in substance, that on January 16, 1974, Terry Parks placed a telephone call to Kenneth Sobkowiak for Joseph Parks concerning the status of the award; that both Terry and Richard listened to the conversation on extension telephones; that Joseph Parks told Mr. Sibkowiak that if Arcadia did not get the contract rather soon, Arcadia did not want the contract, because prices were going up and Arcadia wanted to beat the price increases; and that Mr. Sobkowiak said, "Don't worry about it, Joe; price escalation is built into the contract." (As previously stated, Joseph Parks did not testify at the trial because of poor health.)

(6) Terry Parks testified that if Kenneth Sobkowiak had said during the conversation of January 16, 1974, that there was no price escalation provision in the contract, Arcadia would have bid a higher unit price, because nobody knew at the time what the market was going to be like if and when price controls were lifted, and Arcadia could not have afforded to take the contract at the unit price bid without a guarantee that in the event of losses, Arcadia would not have to bear them all itself.

The defendant's principal evidence relative to the conversation of January 16, 1974, is summarized in the following numbered paragraphs:

(1) Kenneth Sobkowiak testified that it was his intention, in preparing the IFB, to solicit bids on a firm, fixed-price contract that did not contain any price escalation provision. (He had no explanation as to how the "x" happened to be inserted in the reference to ASPR 7–107, although he theorized that the typist who typed the IFB in final form from a draft prepared by him struck the "x" at that point through error.)

(2) Kenneth Sobkowiak also testified that, although he could not remember the details of the telephone conversation with Joseph Parks on January 16, 1974, he did not make a statement to the effect that Mr. Parks should not worry about price increases, as price escalation was built into the contract, because he believed at all times that the proposed contract was a firm, fixed-price contract and did not contain a price escalation clause.

(3) Kenneth Sobkowiak further testified that if a matter of substance, such as whether the proposed contract contained a price escalation provision, had been discussed with Joseph Parks, he (Mr. Sobkowiak) would have prepared a memorandum

on the subject and would have informed the contracting officer, in accordance with his usual custom when matters of importance are orally discussed; and that he did not take any such action in this instance.

(4) Although the testimony on behalf of the plaintiff emphasized the great importance to Arcadia of Kenneth Sobkowiak's assurance, before bid acceptance, that the proposed contract contained a price escalation provision, none of the three Parks made any sort of written record of the assurance.

(5) Arcadia wrote several letters to the Armament Command in 1975 in connection with claims for administrative relief on losses which Arcadia was sustaining in the performance of the contract. However, Arcadia did not, in any of these letters, refer to an assurance by Kenneth Sobkowiak, before bid acceptance, that the proposed contract contained a price escalation provision.

Upon an evaluation of the conflicting evidence, it is held that the plaintiff has not established, by a preponderance of the evidence, that Kenneth Sobkowiak assured Arcadia, during the pre-bid period, that the proposed contract contained a price escalation provision.

Moreover, if such assurance were established, it still would have been necessary, as a practical matter, for Arcadia and the contracting officer (or his representative) to agree on a schedule of wage rates, or of unit prices for materials, or both, to be included in the contract at the time when it was entered into, so that the extent of the Government's liability for Arcadia's increased costs in performing the contract could be determined. Such a schedule was not agreed upon, or even proposed by either Arcadia or the Armament Command; and, in view of this, there was no basis on which the ASPR 7–107 price escalation provision could be applied under the contract.

### Conclusion as to ASPR 7–107

The discussion in the preceding parts of this memorandum of decision necessarily leads to the conclusion, and it is found, that the ASPR 7–107 price escalation provision

was not incorporated in the contract; and that there was no reasonable basis for any belief on the part of Arcadia's management, when the contract was entered into, that the contract contained the ASPR 7–107 price escalation provision.

### Reformation

The evidence in the record makes it plain, and it is found, that the Armament Command never intended to include the ASPR 7–107 price escalation provision in the contract. Consequently, any belief by Arcadia that the contract contained the ASPR 7–107 price escalation provision was entirely unilateral on the part of Arcadia.

This makes it necessary to deny the plaintiff's request for reformation of the contract to include the ASPR 7–107 price escalation provision. Reformation of the contract in this respect would be proper only if both Arcadia and the Armament Command had agreed to include the ASPR 7–107 price escalation provision in the contract and the subsequent omission of the provision from the contract had been due to mistake. The purpose of the reformation remedy "is to make a mistaken writing conform to antecedent expressions on which the parties agreed." *Space Corp. v. United States,* 200 Ct.Cl. 1, 8, 470 F.2d 536, 540 (1972).

### CONCLUSION OF LAW

On the basis of the foregoing memorandum of decision and the facts, as found by the court and stated in the memorandum of decision, the court concludes as a matter of law that the plaintiff is not entitled to recover.

The complaint will therefore be dismissed.

IT IS SO ORDERED.